**UNITED STATES of America ex rel. Isaac MARTINAS, H–3595, Petitioner,**

**v.**

**Joseph R. BRIERLEY, Superintendent, Respondent.**

**Misc. No. 3616.**

United States District Court
E. D. Pennsylvania.

Sept. 18, 1967.

Isaac Martinas, pro se.

Arlen Specter, Dist. Atty., of Philadelphia County, Philadelphia, Pa., for respondent.

## MEMORANDUM OPINION

FULLAM, District Judge.

On April 6, 1964, the relator and four other defendants were brought to trial in Philadelphia County on various criminal charges contained in nine bills of indictment, arising from a series of robberies and related offenses. It was the position of the Commonwealth that one of the defendants, Leonard Watson, had participated in all of these robberies, and that he was accompanied on various of his forays by various of the other defendants. So far as is presently material, the relator was charged with having participated in one of the robberies.

The proceedings were conducted as a trial without a jury. After the Commonwealth had produced most of its evidence, and had rested its case, and after his demurrer had been overruled, relator changed his plea to guilty, and was sentenced to a term of two and one-half to five years in the penitentiary.

The trial was conducted with regrettable informality, and was attended by much procedural confusion. This much, however, is clear: if the relator was represented by counsel at all,[1] he was represented by the same Voluntary Defender who represented two co-defendants, Leonard Watson and Leroy Robinson. There was a clear conflict of interests involved in this representation, since the three defendants all took inconsistent positions in the matter.

Briefly, it was the position of Robinson that the relator actively engaged in planning the robbery, furnished the weapon that was used, and participated in the division of the proceeds, and that the robbery was actually carried out by Robinson, Watson, and Sowell. It was the relator's position that he had been present when Watson, Robinson and others discussed in general terms their need for money and the possibility of committing one or more robberies to obtain it; but that he refused to have anything to do with the scheme. Later, relator permitted the others to regain possession of a rifle belonging to Robinson, which was at relator's mother's house; and he also loaned one of them a hat. However, he denied knowing that they intended to commit any crime, and denied participation therein. He afterward learned that they had committed the robbery and attempted to obtain from the proceeds repayment of a personal loan, but without success. Finally, it was the position of Watson that he was entirely innocent and knew nothing about the whole transaction.

Robinson's admissions to the police, as above outlined, were received in evidence without differentiation or limitation. He testified in his own defense, but only about other offenses with which he was charged. The relator did not testify. However, when sentence was imposed, the record indicates that the relator still maintained the position outlined above, viz., that he first learned of the crime afterward, and did not participate in the planning or carrying out thereof.

 It is altogether too clear for extended discussion that no one attorney could properly represent all three defendants under these circumstances. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Campbell v. United States, 122 U.S.App.D.C. 143, 352 F.2d 359 (1965); United States ex rel. Watson v. Myers, 250 F.Supp. 292 (E.D.Pa. 1966). I have no doubt that the Voluntary Defender did his very best for all three men; and no criticism whatever is here intended as to his intentions or abilities. Nevertheless, as the Supreme Court of Pennsylvania has recognized: "If, in the representation of more than one defendant, a conflict of interests arises, the mere existence of such

---

1. When the trial judge at the outset of the trial asked the Voluntary Defender whom he represented, the attorney mentioned only the co-defendant Robinson. However, the balance of the trial record discloses that he did in fact also conduct the trial on behalf of relator and Watson.

a conflict vitiates the proceedings, even though no *actual* harm results." Commonwealth ex rel. Whitling v. Russell, 406 Pa. 45, 48, 176 A.2d 641, 643 (1962); Commonwealth v. Meehan, 409 Pa. 616, 617, 187 A.2d 579 (1963). Moreover, under the circumstances, the conflict was such that actual prejudice, both in the conduct of the trial and in the formulation of plea decisions, was virtually inevitable. Of course, a plea of guilty entered under these circumstances is not a waiver of the constitutional defect, since the defect vitiates the plea itself. Cf. Commonwealth v. Brown, 210 Pa.Super. 136, 232 A.2d 10 (1967).

■ Since the trial record establishes the constitutional infirmity, no further hearing in this Court is required. This conclusion is bolstered by the fact that petitioner's clear and categorical allegations, in both his state habeas corpus petition and in the present petition, that his constitutional rights were violated in that he was denied the effective assistance of counsel because of the conflict of interests above discussed, have not been effectively denied in the pleadings.

■ The relator has exhausted his state remedies. As noted above, the issue was raised in relator's (1965) state habeas corpus petition. Although his allegations in this respect were not denied or avoided, the Common Pleas Court dismissed his petition without referring to the issue, and was upheld on appeal, by an order entered without opinion. Commonwealth ex rel. Martinas v. Myers, 206 Pa.Super. 735, 213 A.2d 402 (1965).

The issue is thus properly presented to this Court at this time.

It is appropriate to add that, quite apart from the question of conflict of interests, the trial record makes it seem highly unlikely that the change of plea was valid in other respects. There is nothing in the record to show the change of plea, except the statement of the Voluntary Defender, in the midst of a trial which was so confused and irregular that the trial judge himself repeatedly characterized it as a "slovenly presentation", that "the defendant Isaac Martinas wishes to change his plea on Bills of Indictment 1005 and 1006 to guilty." Not one word was addressed to or by the defendant until sentence was imposed, at which time the defendant was still, apparently, protesting his innocence. It is difficult to conjure up any set of facts which might now be presented which could possibly establish, consistently with the trial record, an informed, intelligent and voluntary change of plea.[2] However, in view of the obvious counsel-conflict infirmity, it is pointless to explore that aspect of the matter. Nor would any useful purpose be served in discussing the various other serious due process questions presented by this trial record.

An order will be entered granting the writ prayed for, without prejudice to the right of the Commonwealth of Pennsylvania to retry the petitioner upon his original plea of not guilty, or such other plea as he may hereafter enter while properly represented by counsel and while being accorded all of the rights guaranteed him by the Constitution.

---

2. Relator's petition indicates that he thought his version of the events made him an accessory after the fact, and his counsel suggested this at sentencing. However, he was not sentenced as an accessory (18 P.S. § 5105), nor was he so indicted (18 P.S. § 5107). See: Commonwealth v. Gray, 265 Pa. 540, 109 A. 240 (1920); Commonwealth v. Giacobbe, 341 Pa. 187, 19 A.2d 71 (1941).