**UNITED STATES of America ex rel. Owen Leroy GALLAGHER, Petitioner,**

v.

**Alfred T. RUNDLE, Superintendent, Respondent.**

**Misc. No. 3530.**

United States District Court
E. D. Pennsylvania.
Sept. 26, 1967.

Louis Lipschitz, Lipschitz & Chalfin, Philadelphia, Pa., for petitioner.

LeRoy A. Zimmerman, Dist. Atty. of Dauphin County, Harrisburg, Pa., for respondent.

## MEMORANDUM OPINION

FULLAM, District Judge.

Relator, Owen Leroy Gallagher, and one Charles Ghaul were apprehended walking along a highway about five miles from Harrisburg in the early morning hours of January 17, 1963. A burglary had occurred in Harrisburg a few hours earlier, and two men had been seen fleeing from the scene. An automobile registered in the name of Ghaul's wife was found parked near the site of the burglary, with its trunk open; and there was evidence from which a jury could properly have concluded that tools owned by Ghaul and used in breaking into the burglarized building were found in this vehicle, that fruits of the burglary were found in the immediate vicinity thereof, and that tools owned by Ghaul were found inside the burglarized premises. Both men were charged with committing the burglary, and were tried and convicted.

The principal evidence against the relator was his presence in Ghaul's company when the two men were apprehended (both men resided in New Jersey); his statement to the police that he had been in Ghaul's company the entire previous night; and the fact that mud found on his shoes was "similar" to the soil at the site of the burglary. This latter item of evidence loses some of its probative force because of the admitted fact that no soil samples were taken from the vicinity of the place where relator was walking at the time of his arrest, and because of the absence of any showing of peculiarity about the soil at the site of the burglary.

The two men were tried together. They were both represented by a New Jersey attorney, Angelo Malandra, Esq., and a Harrisburg attorney, Arthur L. Goldberg, Esq. The joint trial was conducted on behalf of the defense principally by Mr. Goldberg, but Mr. Malandra was present throughout the trial. Both men were convicted and sentenced. Relator appealed, but the Superior Court upheld the conviction, Commonwealth v. Ghaul, 205 Pa.Super. 80, 207 A.2d 917 (1965); and the Pennsylvania Supreme Court denied *allocatur*. Thereafter, petitioner filed a habeas corpus proceeding in Dauphin County, Pennsylvania. The writ was refused without a hearing, and this refusal was upheld by the Superior Court,

Commonwealth ex rel. Gallagher v. Rundle, 207 Pa.Super. 759, 217 A.2d 821 (1966). The Supreme Court granted *allocatur*, but affirmed the denial of the writ, Commonwealth ex rel. Gallagher v. Rundle, 423 Pa. 356, 223 A.2d 736 (1966).

■ The present petition for habeas corpus raises but a single ground: It is claimed that the relator's right of representation by counsel at the trial was effectively denied him by reason of the existence of such a conflict of interests between himself and the co-defendant as to render joint representation improper. Cf. Commonwealth v. Meehan, 409 Pa. 616, 187 A.2d 579 (1963); Commonwealth ex rel. Whitling v. Russell, 195 Pa. Super. 277, 171 A.2d 819 (1961); Campbell v. United States, 122 U.S.App.D.C. 143, 352 F.2d 359 (1965). The claimed conflict is alleged to arise by reason of conflicting stories given to the police by the two men after their arrest. Ghaul told the police that he and Gallagher had travelled from Philadelphia to Pittsburgh the previous evening, in the company of two women they had picked up in Philadelphia; and that they had travelled as far as Harrisburg in two separate cars, the men in one car and the women in another, and then had left one of the cars in Harrisburg and proceeded the balance of the journey in a single car. Gallagher, on the other hand, told the police that he and Ghaul and the two women travelled from New Jersey to Pittsburgh, all four being in the same vehicle; and Gallagher did not tell the police that they had stopped in Harrisburg. Both men told similar stories as to their return trip from Pittsburgh to Harrisburg by hitchhiking.

The contention that this situation gave rise to conflicting interests was not raised at trial or on appeal, but was raised for the first time in the habeas corpus proceedings. The common pleas court and the Pennsylvania Supreme Court have taken the position that no genuine conflict of interests arose by reason of these circumstances, pointing out that neither defendant sought to inculpate the other; that if either story were accepted as correct, then both defendants should be acquitted; and that all that had been shown was a "minor discrepancy" in the two narratives.

However, the discrepancy was not thus minimized in the course of the trial. Neither defendant presented any evidence, but the results of their respective interrogations by the police were presented as part of the Commonwealth's case. On two occasions in the course of his charge, the trial judge discussed, very specifically and emphatically, the conflicting stories given by the two men to the police, and there can be no question but that the jury was, as to each defendant, invited to infer guilt from the fact that the two stories did not coincide.[1] But it does not follow that the representation of both defendants by the same counsel was thereby rendered inadequate in the constitutional sense. This was not a case of conflicting positions on the merits, where the mere existence of possible conflict would hamper counsel's performance. Cf. Commonwealth v. Meehan, supra. What resulted in this case was at most merely a nominal exacerbation of the prejudice inherent in a joint trial of the two defendants under these circumstances. The prejudice would not have been substantially lessened by the retention of separate counsel.

■ No request was made for a severance, and it has not been suggested in the present proceeding or in any other proceeding that the relator's constitutional rights were prejudiced by the joint trial as such. It is not a violation of due process to have a joint trial under these circumstances, if the jury is adequately instructed, Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957); United States ex rel. Lawrence Cooper v. Rundle, (E.D.Pa.Misc.No. 3413, May 10, 1967, unreported). Because of the use which was made of the co-defend-

---

1. The hearsay nature of this evidence when thus used has never been made the basis of complaint.

ant's statement at trial, there is some basis for belief that the relator may have been prejudiced, and that the instructions did not meet the requirements of *Delli Paoli*. However, I am convinced that all of these matters were fully and carefully considered by the relator and his counsel in advance of, and during the course of, the trial; and that the decision not to request a severance, and to present a united front with joint representation, constituted an informed and deliberate choice as a matter of trial strategy.

As indicated above, there were certain disadvantages to the relator by reason of the choices made. But it is also apparent that there were some advantages, and that there would have been other disadvantages had a different choice been made. By telling the police that he and Ghaul had been together all night, relator had already cast his lot with Ghaul to a very significant extent. Moreover, if a severance had been granted, the risk that the co-defendant might be prevailed upon to appear as an adverse witness would be greatly increased.

At the hearing in this court, Mr. Goldberg testified that joint strategy conferences were held between himself and Mr. Malandra, at which both defendants were present, and at which the questions of whether to request a separate trial, and whether to have joint or separate representation, were discussed. It seems clear that the final decision in each of these instances was made by the lawyers, but both defendants clearly knew of and acquiesced in the decisions which were made.

The relator admits that he was present during these discussions, and that the fact that he and Ghaul had given somewhat different stories to the police was fully discussed and developed. He testified, however, that the question of a possible conflict of interests between himself and Ghaul was not discussed, nor was there any discussion about conflict requiring separate representation. Mr. Goldberg agrees that the specific issue of conflict of interests requiring separate counsel was not discussed, because that concept did not occur to any of them.

In this connection, it is important to note that counsel and the parties had already decided, for reasons not shown to have been tainted by conflict of interests, to present no evidence at the trial; thus, there was no real issue of either defendant's credibility to be argued, to the possible detriment of the co-defendant. I mention this not for the purpose of showing that the relator was not prejudiced by the conflict of interests, but to show that under these circumstances there was no conflict. Compare United States ex rel. Martinas v. Brierley, 273 F.Supp. 260 (E.D.Pa.1967).

Under any view of the matter, it is perfectly clear that the relator knew in advance of trial what he had told the police and what Ghaul had told the police, and that he advisedly acquiesced in the decision to present a joint front before the jury. He cannot now be heard to say that his constitutional rights were thereby violated. Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed. 2d 408 (1965); Budd v. Rundle, 267 F. Supp. 49 (E.D.Pa.1967).

Finally, without derogating from the principle that it is the duty of a Federal court to exercise its independent judgment in matters of alleged Federal constitutional violations, I am mindful that relator's claim of conflict has been fully considered and rejected by the Pennsylvania Supreme Court, whose decision, while perhaps not technically binding, should certainly be followed by this court, unless clearly binding appellate precedent requires a different result.

Writ denied.