Charles Marvell MOORING, Appellant,

v.

STATE of Missouri, Respondent.

No. 57516.

Supreme Court of Missouri,
Division No. 1.

Nov. 12, 1973.

Joseph R. Aubuchon, Asst. Public Defender, Clayton, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal (taken prior to January 1, 1972) from denial, after evidentiary hearing, of motion under Rule 27.26, V.A.M.R., to vacate and set aside judgment of conviction of rape.

Charles Marvell Mooring was convicted of rape by a jury which assessed his punishment at fifty years' imprisonment. Sentence and judgment were rendered accordingly; and, on appeal, the judgment of conviction was affirmed. State v. Mooring, 445 S.W.2d 303 (Mo.1969).

As grounds for relief movant alleged: (a) that his conviction resulted from illegal arrest, illegal identification procedure and denial of counsel at lineup; (b) that the prosecution employed improper methods calculated to produce a conviction which, coupled with the identification by prosecutrix, deprived him of a fair trial; (c) ineffective counsel.

Movant presented his case by the trial transcript and testimony from Florence Bindbeutel, a supervisor in the I.B.M. Department of the Board of Election Commission, Ruth Mary Brock, the prosecutrix, Charles M. Shaw, defendant's trial and appellate counsel, and himself.

Mrs. Bindbeutel stated that the cards furnished by her office to the circuit court for selection of jurors showed name, address, township, and precinct, by which it would be possible to determine whether the person involved was from Ladue or Kinloch. They did not show race. By transcript reference movant elicited that the venire of thirty-four jurors did not contain any Negroes.

Mrs. Brock acknowledged that she had seen pictures of men brought to her home for her to identify about four months before trial. She saw a picture of the defendant some time before trial. She viewed pictures, five to seven at a time, on three or four occasions. On the occasion she identified a picture of defendant the police may have said "we have the man," but she was not certain how the words were. She was interviewed by a Kenneth Ziegler to whom she told what happened. There were several identifications and she identified defendant by a picture. She also told Mr. Ziegler that the police had told her two men had also identified defendant at the time she identified his picture. "They told me that they had confessions from the * * * other two men * * * involved, but I don't recall whether they told me that at the time that they brought the picture * * *. There had to be some indication that the man was among these in the pictures otherwise they wouldn't have brought them, but I don't remember what they said * * *." She could not remember a lineup, but when her memory was refreshed from the transcript she recalled a lineup of four persons from which she identified defendant. She thought the lineup occurred after the picture identification. She also identified a man named Taggert and another as being involved in the rape.

The trial transcript shows that the rape occurred about 10:30 p. m., February 9,

1966, in an area lighted by house lights. Mrs. Brock saw the faces of her three assailants, Charles Marvell Mooring, Nathaniel Warters, and Michael Taggert. She saw Mooring's face for several seconds when she was first grabbed and for several more seconds as she was dragged to some bushes. She also saw his face for two full minutes while he was performing his act of forcible intercourse. Mrs. Brock made an in-court identification of Charles Marvell Mooring as one of her assailants. She also testified to seeing a picture of him and at the police station. Defendant made no objection at trial to this evidence. Upon cross-examination by defendant, Mrs. Brock testified with respect to the police lineup. The transcript shows also that Detective James Scavatta testified to Mrs. Brock's identification of defendant Mooring. This, too, went in without objection, and defendant cross-examined the officer on the subject. The transcript also shows that defendant adduced evidence calculated to raise doubts as to the identification and on alibi. By transcript reference it was shown that trial counsel filed no motions to suppress identification testimony.

Charles Shaw, a lawyer engaged in the practice of criminal and defense law for a number of years, represented movant on the rape charge both in the trial court and on appeal to the supreme court. He did not remember how many times he discussed the case with defendant in preparation for trial. The defendant told him about a lineup and everything that happened from the time defendant was arrested. He also represented a man named Taggert and a boy named Hull (Michael Taggert and Bradford Robert Hull; see State v. Taggert, 443 S.W.2d 168 (Mo. 1969)) on other rape charges involving different facts and victims. He did not talk with any other men in the lineup and could not remember what cause the police gave for the original arrest of Mooring, Taggert, and Hull. He did not know whether Taggert may have implicated Mooring by affidavit or writ or some other proceeding. With respect to whether movant knew Mr. Shaw also represented Taggert, he knew it because he and Taggert were friends. With respect to motions to suppress, Mr. Shaw explained: " * * * the crux of the case was the identification of the eyewitness. I had felt that under the circumstances from what I knew of the case, that this woman's identification would not be good. The trial itself * * * bore me out * * * she had the wrong height, the wrong weight, the wrong features, the wrong complexion. I felt that, at the beginning, from a tactical point, that I wanted to leave the identification alone until we went to trial, * * * one of the ways I handle identification cases. I don't like preliminary hearings, I don't like in any way to get involved in attacking the identification before trial because my experience has shown that all you do is educate the policemen and the witnesses. * * * I wanted to do all this in Court when we proceeded to trial and when we went to trial, the eyewitness identification was, I thought, legally and factually extremely flimsy. * * * that is * * * a matter for the jury to inquire, to decide. I have always felt the defendant was convicted not on his identification but by the failure of an alibi which was raised on appeal. I felt that this was improperly attacked by the prosecution."

With respect to his representation of Taggert and Hull on other charges at the same time he represented movant, Mr. Shaw explained: " * * * they were friends, hired me. * * * What difference would it make who would be blaming anything on a lineup, as far as my legal work is concerned. * * * My understanding of the law is that if all three or more claim they are friends, * * * there can't be a conflict of interest."

Charles Marvell Mooring stated that there were no blacks in the venire called for his trial. He told Mr. Shaw about the lineup procedure used and that no one was similar to him in physical appearance and dress. He stated Mr. Shaw did not discuss

a pretrial motion or the lineup with him, except to tell him the lineup was unimportant.

Upon this evidence the court found: "* * * that Mr. Shaw, being fully aware of his right to file a motion to suppress the lineup identification, but choosing not to for tactical reasons, was exercising his judgment in formulating trial strategy. His decision did not demonstrate such ineffective counseling as to deny movant of due process and equal protection of the law * * *.

"The only other point * * * is a claim of a denial of Constitutional Rights * * * because of a systematic exclusion of Negroes from the petit jurors who were called to hear his cause.

"This point was not contained in petitioner's motion * * *. Further, this point was preserved and taken up by petitioner in his appeal * * * (State v. Mooring, 445 S.W.2d 303, 1969) and was overruled * * *. At his hearing, petitioner did not produce any witnesses who proved up the alleged systematic exclusion of Negroes from the petit jury panel.

"The Court has reviewed the remaining allegations * * * and find[s] them without merit. Therefore petitioner's motion is denied."

Upon this review, this denial of relief is not to be disturbed unless the findings, conclusions, and judgment of the trial court are clearly erroneous. Rule 27.26(j), V.A.M.R.

Appellant contends (I) that he was denied due process "in that the circumstances of his identification were so suggestive as to make it all but certain that he would be picked out"; (II) that he was denied effective assistance of counsel "in that he failed to file a pre-trial motion to suppress identification testimony obtained by an unconstitutionally suggestive lineup"; (III)

that he was denied effective assistance of counsel "in that movant's trial counsel represented three men potentially accused of the same offense"; (IV) that he was denied an impartial trial by a jury of his peers "in that Negroes were systematically excluded from both the venire panel and the petit jury." (In addition to counsel's brief in behalf of appellant, appellant has filed, *pro se*, a supplemental brief on Points II and III.)

■ In presenting Point I, appellant recognizes that "no objection was made at trial to this identification, nor was any mention made in Movant's Motion for a New Trial or in his appeal * * *." This alone is sufficient to show that the denial of relief on this ground was not clearly erroneous. This matter was, at most, a subject for trial error; and, as admitted, was not preserved for review. In addition, denial of relief on this ground in the posture of this case was not clearly erroneous because an in-court identification is admissible even though a prior confrontation was improper if the in-court identification has an independent origin. Cannon v. State, 332 F.Supp. 23, 25[2] (E.D. Mo.1971); State v. Jones, 446 S.W.2d 796 (Mo.1969). Mrs. Brock's testimony provided evidence of such independent source.

■ With respect to Point II, appellant argues that counsel's failure to file a pretrial motion to suppress identification exceeded the bounds of trial strategy because "the essence of a substantial defense was blotted out. Bruce v. United States, 126 U.S.App.D.C. 254, 152 F.2d 114, 116–117 [126 U.S.App.D.C. 336, 379 F.2d 113]." The difficulty with this assertion is that it assumes the identification procedure was constitutionally invalid, an assumption which is not warranted under the evidence of independent source demonstrated in denial of Point I. Mr. Shaw's explanation of his trial strategy when set against the only other testimony on the subject, that of

movant, provided ample basis for the trial court to deny relief on this ground. Gaitan v. State, 464 S.W.2d 33, 36 (Mo.1971); Robinson v. State, 454 S.W.2d 930, 932 (Mo.1970).

Similarly, Mr. Shaw's observations with respect to the now asserted conflict of interest, Point III, provided ample basis for the court to deny relief on that allegation. The record fails to show that anything was done by counsel at defendant's trial, or foregone by counsel and lost to defendant, which was detrimental to him and which was advantageous to a codefendant; and dual representation does not make such representation illegal *per se*. Mason v. State, 468 S.W.2d 617 (Mo. 1971); United States v. Williams, 429 F.2d 158 (8th Cir. 1970).

As found by the trial court and demonstrated by the motion, Point IV with respect to alleged systematic exclusion of Negroes from the venire and jury was not presented to the trial court. Consequently, it is not now for review. Maggard v. State, 471 S.W.2d 161 (Mo.1971). Also, this matter is not properly for review because it was reviewed exhaustively and denied on movant's direct appeal, State v. Mooring, supra, l.c. 304–305[1, 2]; and where an issue is raised and decided on direct appeal the defendant cannot obtain another review under Rule 27.26, Balle v. State, 467 S.W.2d 888 (Mo.1971).

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

BARDGETT, P. J., HOLMAN, J., and DONNELLY, C. J., concur.

SEILER, J., not sitting.