STATE of Missouri, Plaintiff-Respondent,

v.

Bruce Wayne COX, Defendant-Appellant.

No. 37160.

Missouri Court of Appeals,
St. Louis District,
Division Three.

July 6, 1976.

McIlrath, Black & Williams, Flat River, for defendant-appellant.

4. See cases collected in Annot., 6 A.L.R.2d 1277, 1284–1285 (1949).

John C. Danforth, Atty. Gen., Preston Dean, Sheila K. Hyatt, Asst. Attys. Gen., Jefferson City, John B. Berkemeyer, Pros. Atty., Hermann, for plaintiff-respondent.

KELLY, Judge.

Bruce Wayne Cox was convicted in the Circuit Court of Gasconade County of the offense of stealing property of the value of at least $50.00, § 560.156 RSMo 1969 and sentenced to two years in the custody of the Missouri Department of Corrections. § 560.161.1(2) RSMo 1969. A timely Motion for New Trial was filed and overruled, and he thereafter filed his Notice of Appeal within the time specified by Rules 28.03 and 81.04 V.A.M.R.

On appeal no challenge is made to the sufficiency of the evidence to support the verdict of the jury and a short statement of the evidence viewed most favorably in support of the verdict will suffice. On October 17, 1973, appellant and James Harold Cooper were living in rooms above the Town Tavern in Gerald, Missouri. Thomas Phelan and Richard Overturf spent the evening with them. Overturf who had lived in Bland, Missouri, was familiar with Mester's Package Liquor Store which was located in Bland and conceived the idea that the four of them could steal some money from the liquor store. Pursuant to this plan the four young men travelled to Bland in appellant's auto. Upon arriving in Bland, Phelan and the appellant went to the back door of the liquor store and engaged Mr. Ross Mester, the elderly proprietor of the liquor store, in conversation about an old truck parked in the vicinity of the liquor store while Overturf entered the front door of the liquor store and stole sixty-seven dollars cash from the cash register. While the theft was being perpetrated Cooper remained in the appellant's car. The stolen money was divided among the four young men after they left the scene. Shortly after the incident State troopers stopped the appellant's car in Sullivan, Missouri, with the four young men therein and a search of their persons brought to light the stolen monies.

On appeal three points are presented in support of appellant's prayer that his judgment of conviction be reversed and the cause remanded for a new trial. These are: the trial court erred First, in not granting his request for a continuance in order to retain other counsel; Second, in not granting a continuance after it learned of his dissatisfaction with his trial counsel before the jury was impanelled and after it learned that his trial counsel also represented one of the State's witnesses, James Harold Cooper; and Third, in not granting his Motion for New Trial on the basis of newly discovered evidence tending to prove his innocence. We conclude that this judgment must be reversed and the cause remanded for a new trial for the reason appellant was denied his Sixth Amendment right to counsel under the peculiar circumstances of this case because his trial counsel was representing a prosecution witness who appeared and gave testimony implicating appellant in the commission of the crime charged.

Sometime after the theft from the liquor store in Bland, Missouri, appellant and James Cooper went to the law offices of Mr. Joseph Neaf and retained him to represent them in charges which were filed against them by reason of this theft. Both appellant and Cooper were subsequently charged in separate Informations with the theft from the liquor store, but Cooper went to trial first and was convicted of the offense in December 1974. Although Mr. Neaf did not appear at the time sentence was imposed on Cooper for this crime, he was, at the time of this trial, still working on Cooper's case.

On February 26, 1975, the prosecuting attorney filed in the Circuit Court of Gasconade County, Division No. II a Motion to Endorse Additional Witness and mailed a copy of this Motion to Mr. Neaf, appellant's counsel of record. The witness sought to be endorsed was James Harold Cooper. Mr. Neaf did not advise appellant of the pendency of this Motion.

Appellant, having become disenchanted with Mr. Neaf's representation, on March 4, 1975, went to the offices of his present

counsel on appeal, Mr. Black, and discussed with him the possibility of Mr. Black representing him in the trial of his case. Mr. Black advised him that until Mr. Neaf was no longer in the case he could not represent appellant. The following evening, March 5, 1975, appellant called Mr. Neaf and advised him of his desire that Mr. Neaf withdraw from his case. Mr. Neaf agreed and told appellant to meet him in the courthouse on Friday, March 7, 1975, the date the cause was set for trial, and they would get it settled and worked out.

On March 7, 1975, appellant met Mr. Neaf at the courthouse and following a short discussion Mr. Neaf went into the judge's chambers. Shortly thereafter Mr. Neaf exited from the judge's chambers and told appellant that both of them would have to talk to the judge about this change of counsel. Appellant and Mr. Neaf then went to the chambers of the trial judge and prior to the time the venire was sworn for voir dire examination the trial judge, in chambers, made a record which reflects that a few minutes previous to the making of the record, appellant informed the trial court that he had talked with two attorneys other than Mr. Neaf and had made arrangements to be represented by Mr. Black. The trial court said that "by implication, at least, the Defendant, pro se, requested a continuance of the trial until Mr. Black could be here." At that point the trial court informed the appellant that inasmuch as he was at that time represented by Mr. Neaf and Mr. Neaf was present and apparently ready for trial, his request for continuance would be denied; that the case would go to trial and he could either proceed with the matter pro se or ask Mr. Neaf to continue representing him.

Appellant explains his reason for agreeing to go forward with Mr. Neaf by testifying at the evidentiary hearing on his Motion for New Trial that after consulting with Mr. Neaf when he was told that the case was going to trial despite his desire to hire other counsel as follows: "rather than go in on my own to go ahead and take him in because, like, I don't know the legal terms and things. I thought he could do a better job of it than I could."

At the conclusion of the voir dire examination of the venire, the trial court took up the Motion to Endorse Additional Witness in the presence of, but out of the hearing of, the jury. While the appellant was apparently present in the courtroom, the record does not reflect that he participated in the discussions relative to this Motion or if he even had any knowledge of its existence at that time. The trial court inquired of Mr. Neaf if he had received notice of the Motion and Mr. Neaf acknowledged he had. The trial court thereupon advised Mr. Neaf that he was going to sustain the Motion, whereupon the following colloquy took place:

"MR. NEAF: Your Honor, I do represent Mr. Cooper in another case. I would like to speak to him briefly before he's called upon to testify, to advise him of his rights.

THE COURT: Well, certainly he can speak to you and you can speak to him, if you care to. I see no—that I have any control over that. When do you anticipate calling him?

MR. BERKEMEYER: Oh, about the third or fourth witness, I believe. I'm curious as to which case he's referring to. If you are referring to the previous trial, I believe that's over with.

MR. NEAF: Your Honor, I still would like to talk to him.

MR. BERKEMEYER: I've got no objection to your talking to him."

Neither the defense counsel nor the prosecutor made the trial judge fully aware of the fact that this witness, James Harold Cooper, had been charged and convicted of Stealing arising out of this same set of circumstances in Division No. 1 of the Circuit Court of Gasconade County, and that Mr. Neaf had been the counsel of record who represented Cooper throughout that trial. There is nothing in the record to indicate that the trial court was aware of this circumstance until after the Motion for New Trial had been filed and evidentiary hearing thereon conducted.

The record is clear, however, that at no time prior to the filing of the Motion for New Trial, was there any indication that any request for a continuance had been made to the trial court on the grounds that the appellant's trial counsel was faced with a conflict of interest if Cooper was to appear as a prosecution witness.

■ Appellant has not preserved this point for review. Nevertheless, we choose to exercise our discretion and review this point on the basis of "plain error," Rule 27.20(c), *State v. Crockett,* 419 S.W.2d 22, 28 (Mo.1967), because it involves an alleged violation of appellant's Sixth Amendment right to representation by counsel whose assistance is untrammeled and unimpaired by a lawyer's simultaneous representation of a client with interest antagonistic to those of the accused. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), *Whitlock v. United States,* 478 F.2d 1087 (8th Cir. 1973); Anno. "Propriety and prejudicial effect of Counsel's representing defendant in criminal case notwithstanding counsel's representation of prosecution witness," 27 A.L.R.3d 1431.

■ An attorney who represents both the defendant and a prosecution witness in the case against the defendant is representing conflicting interests. There is however, no deprivation of constitutional rights if the defendant knowingly consents to representation by an attorney who also represents a prosecution witness. *Ciarelli v. State,* 441 S.W.2d 695, 697[2] (Mo.1969). The consent essential to obviate the apparent deprivation of constitutional rights must of necessity be a consent with a knowledge of the facts and voluntarily given. *United States v. LaVallee,* 282 F.Supp. 968, 971 (D.C.E.D. N.Y.1968), is a case similar to the one we have under consideration. In *LaVallee* the defendant did not learn that his attorney represented a conflicting interest until after the trial had commenced, and it was there held that it could not be said that he assented to it by his silence. "It is understandable that a criminal defendant, not necessarily familiar with all of his constitutional rights, and not informed of the same

by the trial judge when the dual representation became apparent, might not interrupt his trial to request that his attorney be relieved even if he was made aware during the course of the trial that a prosecution witness was a client of his attorney." *United States v. LaVallee,* supra, l.c. 971.

■ Here, appellant and Cooper both retained Mr. Neaf at a time when there was no apparent conflict of interest in dual representation; however, once it became apparent that the State was seeking leave to endorse Cooper as a prosecution witness the conflict issue surfaced. Mr. Neaf, nevertheless, did not inform appellant nor the trial court of this potential and voiced no opposition to the Motion to Endorse Additional Witness. Appellant, according to his testimony, first learned that Cooper was to be a witness against him "When he testified that day in Court. On Friday when he came in and testified against me."

Appellant here had been forcefully denied a request for continuance to have new counsel appear in his behalf and told in no uncertain terms that the case was going to trial on that date. He was further told by the trial court that he could either defend himself or accept the services of Mr. Neaf. His own counsel did not advise him that Cooper was going to be a witness against him despite the fact counsel knew since February 26, 1975, that the State intended to call Cooper to the stand. Faced with the alternative of trying the case himself, this nineteen year old defendant, untrained in the law, was hardly afforded any choice other than to proceed to trial with counsel he had sought to replace because, rightly or wrongly, he felt was not properly representing him. There is no evidence that when the witness Cooper appeared appellant was advised that there was a potential conflict of interest and that he could at that time object to the continued representation by his counsel on that grounds. Under these circumstances we hold that it cannot be said he consented to representation by counsel who had a conflict of interest.

We hold, that under the facts in this record, appellant was deprived of effective

assistance of counsel by reason of the violation of his Sixth Amendment rights to a counsel free from any possible conflict of interest, and reverse the judgment and remand the cause to the Circuit Court for a new trial.

The other points raised by appellant are not likely to arise on retrial so we do not reach them in arriving at our decision.

Reversed and remanded for a new trial.

SIMEONE, P. J., and GUNN, J., concur.