STATE of Missouri, Plaintiff-Respondent,

v.

William T. JOHNSON,
Defendant-Appellant.

No. 38191.

Missouri Court of Appeals,
St. Louis District,
Division One.

March 1, 1977.

Motion for Rehearing and for Transfer
Denied April 15, 1977.

Application to Transfer Denied
May 10, 1977.

Robert C. Babione, Public Defender, Blair K. Drazic, Asst. Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Preston Dean, J. Michael Davis, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Richard G. Callahan, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

Defendant William T. Johnson was convicted of murder in the second degree and

the punishment assessed by the jury of thirty years imprisonment was imposed by the trial court. Defendant was with a group of young men who were approached by another group in the hallway of Sumner High School in St. Louis on March 18, 1975. This encounter erupted into a gun-firing melee resulting in the death of Stephen Goods. Defendant does not challenge the sufficiency of the evidence to support the conviction but urges four points of error which, he argues, require the judgment of conviction and assessment of punishment to be reversed. We affirm the judgment in all respects.

Initially defendant contends that he was denied the effective assistance of counsel guaranteed to him by the state and federal constitutions when the trial court denied defense counsel's motion for leave to withdraw from the case due to an alleged conflict of interest. Robert Lee was among those endorsed by the State as a prosecution witness; and on the second day of trial, well into the State's case, proceedings were held outside the hearing of the jury to determine whether Lee would testify or choose to invoke his right to remain silent. At this time the attorney who had represented Lee in a prior, unrelated criminal charge, to which Lee had entered his plea of guilty, appeared with Lee and apparently advised him of his right to remain silent. This attorney was a member of the public defender's office, as was the attorney who represented defendant. When it became apparent that Lee would invoke his right to remain silent, the assistant prosecutor informed the court that the State would not call Lee before the jury. Defendant's attorney then moved to withdraw from the case, due to the alleged conflict of interest situation which resulted from another member of the public defender's office advising a potential prosecution witness. This motion was denied and the cause proceeded. Lee was not called as a witness and neither his participation in the incident nor his potential testimony was ever suggested by the record or by counsel on appeal.

It is clear that a defendant is denied his constitutional right to the effective assistance of counsel if his attorney represents conflicting interests without the defendant's knowledge and assent and an attorney who represents both the defendant and a prosecution witness is representing conflicting interests. *Ciarelli v. State*, 441 S.W.2d 695, 697[2] (Mo.1969); *State v. Cox*, 539 S.W.2d 684, 687[3] (Mo.App.1976). Once the existence of a conflict of interest has been established a showing of actual prejudice to the accused is not necessary, since the right to counsel is "too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States*, 315 U.S. 60, 75–76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), quoted in *State v. Crockett*, 419 S.W.2d 22, 28 (Mo. 1967). But this rule evolved out of representation of codefendants or persons charged in related criminal matters.

Here, however, the initial inquiry must be whether a conflict of interest situation actually existed. *Mason v. State*, 468 S.W.2d 617, 620[1] (Mo.1971). A conflict of interest such as to deny to a defendant the effective assistance of counsel must be shown by evidence. *Commonwealth v. Smith*, 362 Mass. 782, 291 N.E.2d 607, 609[4] (1973). In order to evidence a conflict of interest something must have been done by counsel in the trial, or something must have been foregone by counsel and lost to defendant, which was detrimental to the interests of defendant and advantageous to the interests of witness Lee. *Mooring v. State*, 501 S.W.2d 7, 11[4] (Mo.1973); *Mason v. State, supra* at 620[1]. No such evidence appears in this record. It is difficult for us to imagine how the interests of defendant conflicted, *per se*, with those of potential prosecution witness Lee when Lee was never called as a witness due to his invocation of the right to remain silent. Absent some showing of a conflict of interest the fact that one attorney from a large public defense organization represents a defendant in a criminal trial, after another staff attorney from that same organization represented a prosecution witness in a concluded and

unrelated criminal matter, does not create a *per se* conflict of interest at defendant's trial. *People v. Wilkins*, 28 N.Y.2d 53, 320 N.Y.S.2d 8, 268 N.E.2d 756 (1971). Finding no conflict of interest in the instant situation, we deny this point of defendant's appeal.

Defendant's next contention is that the trial court erred in unduly limiting his cross-examination of a key prosecution witness. This witness was a member of the deceased's group during the shooting incident, and on cross-examination defense counsel asked the witness if he was familiar with the term "flourishing." The state's objection was sustained. At the bench defense counsel made an offer of proof that, if asked, the witness would state that he was familiar with the term, knew that flourishing was a felony, and knew that one could not enter the United States Marine Corps if convicted of a felony. Defense counsel believed that this witness had flourished a weapon during the incident,[1] and that a motive existed for the witness to conceal this fact since he was a Marine stationed in Hawaii at the time of trial. Thus, defendant argues, the witness had a motive to lie about his alleged role during the shooting in order to protect his occupation as a Marine.

A witness is subject to impeachment by a showing of a motive for the witness's testimony which might bear on his credibility. Subject to his claim of right against self-incrimination, he may be asked questions concerning whether he committed or admitted committing a specific criminal act. But the latitude and extent of cross-examination on such issues for purposes of impeachment is initially a determination to be made by the trial court within the exercise of its discretion. Such determinations will be set aside on appellate review only where it is affirmatively shown that the exercise of discretion was abused. *State v. Lynch*, 528 S.W.2d 454, 458[5] (Mo.App. 1975); *State v. Winters*, 525 S.W.2d 417, 425[17] (Mo.App.1975). We find no abuse

of discretion and rule the point adverse to defendant.

The third contention advanced by defendant is that the trial court abused its discretion by refusing to reduce the extent or duration of the punishment assessed by the jury. Following a motion to reduce sentence, pursuant to Rule 27.04, an appellate court has the power to reduce the extent or duration of the sentence in a case where passion and prejudice so clearly appears from the record that the appellate court can confidently say the trial court abused its discretion by declining to reduce the punishment. *State v. Agee*, 474 S.W.2d 817, 820[11] (Mo.1971); *State v. Mucie*, 448 S.W.2d 879, 889[11] (Mo.1970). No case has conclusively established how bias or passion or prejudice is to be demonstrated from the appellate record, although *State v. Mucie, supra*, enumerated a nonexclusive list of four factors for consideration upon a request for a reduction in the punishment assessed by the jury. We have considered these factors, plus additional ones advanced by defendant in light of the facts concerning defendant's participation in the fatal assault.

Stephen Goods, the victim, was set upon by defendant and three others (three armed with hand guns) in a hall of Sumner High School. After being slapped with an automatic pistol held by one of the four and being kicked by defendant who had a revolver in his hand, Goods was beaten to the floor. As he attempted to rise, one of the group, other than defendant, shot Goods and the defendant thereupon fired a shot at the victim. The victim and others with him were unarmed. The victim died from his injuries that same day. We have concluded that no abuse of discretion occurred when the trial court overruled the motion to reduce the punishment assessed for this brutal slaying.

Defendant's final point is a broadside attack on this State's sentencing procedures, coupled with an argument that the sentence assessed defendant constitutes

---

1. This was specifically denied by the witness earlier.

cruel and unusual punishment. The attack on sentencing procedure is premised largely upon recent United States Supreme Court cases involving assessment of capital punishment. But the point was first raised in defendant's brief and is not preserved for our review. *State v. Goforth*, 535 S.W.2d 464, 468[11] (Mo.App.1976). We note that our courts have repeatedly held that a punishment which is within the statutory limits for the offense, as is the thirty-year assessment in the instant case,[2] is not cruel and unusual because of its duration unless so disproportionate to the offense committed so as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances. *See* e. g., *State v. Agee, supra* at 821[14].

The judgment is affirmed in all respects.

CLEMENS, P. J., and DOWD, J., concur.

**2.** Section 559.009(3), RSMo. (1975 Supp.) Ten years to life imprisonment.