**James LaFRANCE, Movant-Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. KCD 30588.**

Missouri Court of Appeals,
Western District.

July 31, 1979.

John H. Lake, Goller, Hedrick & Lake, Jefferson City, for movant-appellant.

John D. Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

DIXON, Presiding Judge.

Movant appeals the denial of his motion under Rule 27.26 to set aside his plea of guilty and subsequent conviction for manslaughter resulting in a sentence of eight years in the penitentiary.

A single issue is presented by movant on this appeal. That issue is whether the knowing and voluntary nature of the appellant's plea was rendered involuntary because of an alleged conflict of interest on the part of movant's attorney.

The State meets that claim by asserting, first, that no conflict of interest existed under the facts of this case and, secondly, that even if such a conflict of interest existed, it did not affect the voluntary nature of the defendant's plea.

In order to resolve the issue, a full review of the evidence presented is necessary. The underlying charge arose from an altercation among five inmates of the Missouri State Penitentiary, the movant being one of those inmates. There is no dispute that one of the inmates, Patterson, died as a result of the altercation and, more specifically as indicated by the coroner's autopsy report, his death resulted from a stab wound in the neck. It is likewise conceded that all four of the other inmates involved in the altercation were separately charged with second degree murder for the death of Patterson. Howard McFadden, the Public Defender, was appointed to represent all four of the defendants. It is further conceded that charges against the other three potential defendants were dismissed after the mov-

ant pled guilty to a reduced charge of manslaughter and was sentenced to eight years to be served consecutively to the sentence he was serving at the time the altercation occurred.

The three inmates involved in the altercation, besides the movant, were Samuel Cook, James Irving Duncan, and Major Lang, Jr. At the hearing on the 27.26 motion, the statements made by the movant and the other three inmates were offered in evidence. These statements were taken and tape recorded in some way by prison officials immediately after the altercation and were subsequently transcribed. A resume of those individual statements is necessary for understanding of the issue presented in this appeal.

Lang stated that he and the movant were approached by the deceased, and an argument ensued. The deceased pulled two knives from a towel he was holding and struck Lang with a knife. Patterson, the deceased, then struck the movant in the leg with a knife. The movant attempted to escape. At that point, inmate Duncan arrived and hit the deceased on the arm with a golf club causing the deceased to drop one of the knives. Lang said Duncan recovered the knife and stabbed the deceased.

Duncan stated he ran to the scene when he heard of the altercation and struck the deceased on the arm with the golf club, causing the deceased to drop a knife. Duncan admitted he recovered the knife and stabbed the deceased *in the neck*. Duncan then admitted he stabbed the deceased in the chest and fell on top of the deceased.

Another inmate, Cook, said he went to the scene and observed the deceased with two knives. Cook states that he did not stab anyone but admits he struck the deceased in the face with a broken mop handle. He claimed he did not observe any other stabbing.

The movant's statement is that the deceased stabbed Lang in the side. When Duncan arrived and hit the deceased with the golf club, the movant obtained possession of one of the knives. He said that he did not recall stabbing the deceased with a knife but did swing at him with it.

All four inmates were separately charged with second degree murder, but each of the charges asserted that all acted in concert in the death of Patterson. After Mr. McFadden was appointed to represent the four defendants, he met with the four in a group at various times to discuss the case. He never met individually with the movant.

It is conceded by the prosecuting attorney that sometime after the preliminary hearings the prosecuting attorney made a plea bargain offer to Mr. Howard McFadden to dismiss the charges against *any three* of the four inmates *if any one* of them would plead guilty. The movant testified at the 27.26 hearing that he had heard of this offer from the other defendants but that this arrangement had never been explained to him by Mr. McFadden. The movant testified that when he was brought to court on December 15, 1975, which was the day of the entry of his plea to the manslaughter charge, he discussed with Mr. McHenry, the prosecutor, the entry of a plea and a recommendation of eight years. The movant asserts without contradiction that Mr. McFadden was not present at the time of those discussions. The movant further testified that he was "celling with" the other three defendants, and there was constant pressure asserted amongst them for one person to plead in accordance with the prosecutor's offer to dismiss as to three if one pleaded guilty.

Mr. McFadden testified at the 27.26 hearing and indicated he had no independent recollection of meeting separately with the movant. He confirmed that the prosecution had made the offer to dismiss as to three if one pleaded guilty. He further said his file reflected that on the 15th of December, the case against Duncan was dismissed and he presumed that the other two charges were likewise dismissed. When questioned specifically as to whether he had ever discussed the possibility of a conflict in his representation of the movant, his answer was that he did not recall. Mr. McFadden stated that he had in his possession at the time the plea was entered the transcripts from the four inmates which have been previously summarized. Mr.

# 320

McFadden was asked if he considered whether there was any conflict at the time he was representing all four of the defendants, and he said that he did not recall having any thoughts of conflict. He characterized the movant's statement as "his confession."

Also included in the transcript of the 27.26 hearing is considerable testimony concerning a letter dated December 16, 1975, the day after the plea hearing. Mr. McFadden's testimony indicates he relied heavily on this letter in permitting the defendant to enter his plea of guilty. However, when questioned about the time of its receipt, he was unable to explain the discrepancy in the date. Because of the bizarre nature of the letter, it is reproduced in full as follows:

MISSOURI STATE PENITENTIARY
JEFFERSON CITY, MISSOURI

DECEMBER 16, 1975

TO WHOM IT MAY CONCERN:

On this date December 16, 1975, I do solemnly swear that the following statement in the truth, the whole truth, nothing but the truth, so help me God.

I, James LaFrance reg. no. 20266, on the evening of July 3, 1975, did take the life of one inmate Dewitt Patterson, acting alone and not in concert with three (3) of my fellow associates, who have also been charged with the same offense, of acting in concert in the taking of the life of the above named inmate, Dewitt Patterson.

Under the circumstances, inmate Patterson did on the third (3rd) day of July, 1975, force me to take his life with one of two (2) weapons, which moments earlier, prior to his death, he made an attempt to take my life, with the same weapon.

This statement is merely a request to all concerned, that charges be dismissed against the following three (3) named inmates, Samuel Cook, James Duncan and Major Lane. To be frank in speaking, Major Lane was not even at the scene of the crime when it occurred. Cook and Duncan were there, but did not play a part in being responsible in any way. For the death of inmate Patterson, I will testify too to any court in the land. So I, James LaFrance, on this date December 16, 1975, have requested that all charges be dismissed against the remaining three (3) inmates charged, Samuel Cook, James Duncan and Major Lane . . .

I killed (The Fool) Dewitt Patterson, but only because he forced me to do so, simply by making an attempt to try and kill me . . .

Respectfully yours,

James LaFrance # 20266

(s) James LaFrance 20266

cc: HOWARD McFADDEN/ATTORNEY
JAMES McHENRY/DISTRICT ATTORNEY
SAMUEL COOK/DEFENDANT
JAMES DUNCAN/DEFENDANT
MAJOR LANE/DEFENDANT
JAMES LaFRANCE/DEFENDANT

---

It is to be noted that the movant's transcribed statement, which has been examined in full, demonstrates an almost complete incapability of expression in any grammatical sense. The transcript of movant's oral statement has been compared with the letter set forth above. That comparison demonstrates the possibility of movant's composition of the letter is extremely unlikely.

Based on the foregoing evidence and the transcript of the plea proceedings, the trial court found that movant did not present any evidence to show any ineffectiveness of the public defender in his representation of the movant. The reasoning of the trial

court in making this determination is made clear by the colloquy between the movant's counsel and the court at the conclusion of the hearing. Movant's counsel asserted lack of effective representation due to the conflict and the court said:

"THE COURT: At the time I didn't know there were any other persons involved.

MR. LAKE: I understand that."

Subsequently, responding to the continued argument of movant's counsel that a conflict existed, the court made the following comment:

"MR. LAKE: That's the point I'm getting at.

THE COURT: —I don't see the conflict. The fact that three out of the four were treated differently doesn't make a conflict. Now, if he is wanting to get up here and say, 'No, I didn't do it, one of the other four did,' then that would be a conflict, because plainly one lawyer couldn't be expected to represent two or more different people when they were blaming it on each other rather than admitting it themselves. There is no conflict *where the interest of the four are all the same,* without any attempt to blame it on anybody else." (Emphasis supplied).

It is thus clear that that the finding of the trial court that the movant did not prove any ineffectiveness of counsel was based upon the court's belief that no conflict existed with respect to the representation of the movant.

The State in its brief in this court has, with commendable candor, conceded that a defendant is denied his constitutional right to the effective assistance of counsel if his attorney represents conflicting interests. *Ciarelli v. State,* 441 S.W.2d 695, 697 (Mo.1969); *State v. Johnson,* 549 S.W.2d 348, 350 (Mo.App.1977). The State further concedes that once the existence of a conflict of interest has been established a showing of actual prejudice to the accused is not necessary since the right to counsel is too fundamental and absolute to allow courts to indulge in nice calculations arising from its denial. *Holloway v. Arkansas,* 435

U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Glasser v. United States,* 315 U.S. 60, 75–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Mason v. State,* 468 S.W.2d 617 (Mo.1971); *Ciarelli v. State, supra; State v. Johnson, supra.* The State, while conceding the above principles, argues that under *Mason* and *Johnson, supra,* there must be evidence indicating a conflict of interest. The State argues that, in order to meet the burden of proof, the evidence must show that something was done by counsel or foregone by counsel and lost to the defendant which was detrimental to the defendant and which was advantageous to a co-defendant. *Mooring v. State,* 501 S.W.2d 7 (Mo.1973). Based upon this last-stated principle, the State argues that this record does not show that the movant's attorney refrained from doing anything on behalf of movant that he otherwise would have done if he had not been representing the three co-defendants.

*Ciarelli, Mason, Johnson,* and *Mooring, supra,* are all cases where the issue of ineffectiveness arose after trial and the alleged conflict of interest could be examined in the light of counsel's performance at trial. *Ciarelli* is based on knowledge of conflict and waiver by the defendant. *Mason, Johnson,* and *Mooring* were all cases of a full trial and an opportunity to weigh the conduct of counsel on the basis of the record made at the trial. When the claim as it is here consists of ineffectiveness of counsel insofar as it affects the voluntariness of the plea, the concept of proof of forebearance of a defense or the doing of an act detrimental to the defendant is not capable of review on the record. The advice of counsel and its effect on the defendant insofar as that advice affects the voluntary nature of his plea are not as easily determined absent the record which exists at a trial.

This is precisely what the Supreme Court of the United States addressed in *Holloway v. Arkansas, supra* at 490, 98 S.Ct. at 1182, 55 L.Ed.2d 426. The Supreme Court pointed out that when the conflict occurs in the context of plea negotiations and proceedings or a plea of guilty, no rational examination of the actual conduct of the attorney is possible. The court said:

". . . but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation."

In the recent case of *Seales v. State*, 580 S.W.2d 733 (Mo.banc 1979), the majority opinion reflects an acceptance by our court of a per se rule in conflict of interest situations. *Seales v. State, supra* at 736.

The advice of counsel to a defendant with respect to the entry of a guilty plea must necessarily be unhampered by a potential conflict with other representation. Only if counsel's advice, tactics, and attitude during the plea bargaining process are free of any taint of conflict can the voluntary nature of the defendant's plea be assured.

On the record of the instant case, however, the conflict and prejudice affirmatively appears. It seems too clear for argument that there was an obvious and viable claim of self-defense in this case. Further, based upon the statement of the four participants in the affray, the fatal blow was actually struck by Duncan.

It is difficult to apprehend how the movant's claim of self-defense could be vigorously pursued without his counsel developing the fact that Duncan had actually struck the fatal blow. Put another way, the active representation of the movant in a claim of self-defense would have necessarily made it likely that his counsel develop the testimony as presented in the transcripts summarized above. That testimony, if available, would have been detrimental to the interests of the other three inmates. How counsel, faced with that potential conflict, could have given independent advice to the four defendants is impossible to discern.

Even more compelling is the conflict posed by the bizarre offer of the State to discharge three defendants if the remaining defendant pleaded. A lawyer representing any one of the defendants would have had the duty to advise the individual he represented as to which of the potential defendants was most likely to be convicted and thus would be the individual most apt to accept the so-called plea bargain. A lawyer representing this movant would have had to assert the relative lack of involvement in the plea negotiations which obviously was not done. At the very least, a lawyer should have asserted, in mitigation to the sentencing judge, the fact of his client's lesser involvement. This would unquestionably require him to assert facts detrimental to his concurrent representation of the other defendants. How *one* lawyer could perform that duty for the four individuals in the face of this evidence is likewise impossible to discern.

The purported plea bargain is even more astonishing in the light of the theory of the State's case and the "evidence" presented at the time of the plea. When the plea was taken, the court quite properly attempted to establish a factual basis for the plea. The entire proceeding relative to that issue is as follows:

"Q. Well, on the third day of July, 1975, did you make an assault on one DeWitt Patterson? A. Yes, sir.

MR. McFADDEN: Your Honor, the defendant by entering his plea of guilty wishes to admit the allegations—

THE COURT: Well, let me hear him admit it.

MR. McFADDEN: Well, the facts, as the incident occurred, were that LaFrance and three other inmates, Duncan, Lang, and Cook, were engaged in this altercation with a fifth inmate, who subsequently died, that inmate initially assaulted one of these four, and as a result the altercation ensued, and during the altercation the fifth inmate, Patterson, was stabbed and died as a result thereof.

BY THE COURT:

Q. Well, were you involved with these other three people in the killing of this Patterson? A. Yes, sir.

Q. The four of you were acting together?

A. Yes, sir.

Q. Well, you understand in the eyes of the law what one of you did, why all four of you did? A. Yes, sir.

Q. Any time two or more persons are acting together, why, you are equally guilty; do you understand that?

A. Yes, sir.

Q. Are you now telling the Court that you acting with three other people did actually kill this DeWitt Patterson by stabbing him? A. Yes, sir.

Q. You'll have to speak up. A. Yes, sir.

THE COURT: What are the facts, Mr. McHenry?

BY THE COURT:

Q. One other thing, you understand that whatever sentence you get in this case won't begin to run until you have served the sentence that you already have.

A. Yes, sir.

Q. How much time are you pulling?

A. Ten.

Q. Is that the only sentence you have?

A. Yes, sir.

THE COURT: All right.

MR. McHENRY: The facts are about, I think, *what the Public Defender said they were*, Your Honor, except for this: The State has information regarding the involvement of four people in this incident which resulted in the death of Patterson. The facts, *if they are to be called that*, have to be established by the State; and as a result of the process here, bringing charges against these four people, other facts have come to light, and one of those is that this defendant did *participate* in the stabbing.

BY THE COURT:

Q. Do you have anything to say, LaFrance?

A. No, sir.

Q. Are the facts as Mr. McHenry has stated them?

A. Yes, sir." (Emphasis supplied).

Thus, the factual basis presented to the trial court was directly contrary to the theory of the so-called plea bargain. There is absolutely nothing to indicate that the trial court had any notion that defendant was accepting sole responsibility for the killing. The colloquy above indicates the trial court believed he was accepting a plea from one of four persons acting together in the homicide, all of whom were jointly responsible. In fact, the only possible basis for the State's offer to take a plea from one of the defendants is that the defendants were not acting in concert but that only one of the defendants was, in fact, guilty. If that had been disclosed to the trial court, the factual basis for the plea would have been in doubt.

Those facts may well explain the carefully drafted letter of the next day which purports to place all of the onus on a defendant who had already pleaded guilty. Movant denies he signed the letter. There was no proof that he had signed it except for the erstwhile counsel for the defendant who, when presented the letter for identification and without any question being addressed to him made the following gratuitous remark:

"A. Now, how about the letter from Mr. LaFrance to me, a copy of which I have, and which bears his pencil written signature; and, although I am not a handwriting expert, I think anybody, a second grade student could compare that signature with any other exemplar and tell that it is his signature.

THE COURT: What does the letter say?

A. It says: I was acting alone when I killed this man."

The trial court's conclusion that there was no conflict of interest and, therefore, no ineffective assistance of counsel, is clearly erroneous. The cause is reversed and remanded to the trial court with directions to vacate the sentence and conviction and restore the cause to the court's docket for further proceedings.

All concur.