**Dallas J. MOORE, Petitioner,**

v.

**Terry MORRIS, Respondent.**

No. 86–0462–CV–W–O–1–P.

United States District Court,
W.D. Missouri, W.D.

June 23, 1987.

Dallas J. Moore, pro se.

Stephen Hawke, Attorney General, Jefferson City, Mo., for respondent.

### MEMORANDUM AND ORDER DENYING PETITION FOR HABEAS CORPUS

JOHN W. OLIVER, Senior District Judge.

#### I.

This State prisoner habeas corpus case was transferred to the undersigned judge after the death of the Honorable Ross T. Roberts. Our May 6, 1987 order entered shortly after that transfer noted that the Attorney General's response to Judge Roberts' order to show cause had conceded that the "petitioner has exhausted state remedies for his present claim." That order further stated that the "questions of whether the relevant material facts were adequately developed at the Rule 27.26 hearing and whether that hearing was adequate to afford petitioner a full and fair

hearing cannot be determined without an appropriate review of the transcript of the Rule 27.26 hearing conducted before the Honorable Frank Conley, Judge, Division II of the Circuit Court of Boone County, Missouri...." Order entered May 6, 1987 at 1–2. We accordingly directed the Attorney General to file a supplemental response to which the transcript of the Rule 27.26 proceeding would be attached. That order was complied with and we have reviewed the Rule 27.26 proceedings conducted by the State trial courts.

Because the rules relating to exhaustion are not jurisdictional, see *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984), and are based on principles of comity, see *Rose v. Lundy*, 455 U.S. 509, 515–520, 102 S.Ct. 1198, 1201–1202, 71 L.Ed.2d 379 (1982), we have concluded that under the unusual circumstances of this case, we should accept the Attorney General's concession of exhaustion and reach the merits of the postconviction claim presented and ruled by the Circuit Court of Boone County, Missouri and subsequently presented in petitioner's pending federal habeas corpus petition. We find and conclude that petitioner's pending petition should be denied on the merits for the reasons we now state.

## II.

Petitioner's Rule 27.26 motion alleged that he was in State custody serving a ten-year sentence imposed on October 9, 1981 by the Circuit Court of Boone County, Missouri on his plea of guilty to a charge of robbery in the first degree, a class A felony. Petitioner alleged the following as the sole ground for postconviction relief in his Rule 27.26 motion: "Guilty plea made involuntarily, due to conflict of counsel and ineffective assistance of counsel." Respondent's Exh. C at 27.[1]

The State trial court conducted an appropriate Rule 27.26 evidentiary hearing at which the petitioner and his trial counsel testified. At the close of that hearing and after both sides rested, the Honorable Frank Conley, Judge of the Circuit Court of Boone County, Missouri, properly made careful inquiry in regard to the scope of petitioner's Rule 27.26 claim for postconviction relief. The transcript of the Rule 27.26 hearing shows that Judge Conley stated the following:

THE COURT: Gentlemen, if I'm not mistaken, there were two points raised in your motion. One was ineffective assistance of counsel, and the other was conflict of interest of counsel. My notes do not show that you have offered any testimony on the question of ineffective assistance of counsel. Do you believe that there is an issue on that point and if so, please point out the evidence to me that supports that ground. It seems that your testimony has been on the conflict of interest of counsel.

Respondent's Exh. D at 41–42.

Mr. Dierks, petitioner's appointed Rule 27.26 counsel, responded, "Yes, Judge. I would agree with that." *Id.* at 42. The Rule 27.26 hearing transcript then shows:

THE COURT: In other words, may I assume that we are dealing then with the one issue which is conflict of counsel?
MR. DIERKES: Yes, Judge.

Judge Conley then stated that: "Let the record reflect that while two grounds were raised in the motion filed by Movant, that the ground denominated as ineffective assistance of counsel, that counsel are in agreement that there has been no evidence adduced on that particular subject and hence that issue is found in favor of the State." *Id.*

After considering the post-hearing briefs filed by the parties, Judge Conley prepared and filed a memorandum decision in which he accurately summarized the testimony

---

1. Petitioner stated the following factual circumstances in his Rule 27.26 motion in support of that ground: "David Strauss, Public Defender, was appointed to represent me and my two codefendants, Janice Stoner and Grover Hollinger. Mr. Strauss was more interested in getting probation for my co-defendants than in

representing my interests. He told me that Janice Stoner and Grover Hollinger would be witnesses against me if we would go to trial, and that I would be convicted. He said the only way out for me was to plead guilty. He did not inform me that I had a right to independent counsel." *Id.*

given by the two witnesses who testified at the Rule 27.26 hearing. The closing paragraphs of that memorandum decision stated that:

> In a post conviction action following a plea of guilty, as here, the burden of proof rests with movant. When the allegation that the plea is not voluntary rests on a claim that counsel had a conflict of interest, movant must show an actual conflict of interest to be entitled to relief. See *William[s] v. State*, 615 SW2d 487. In this case other than movant's claim of conflict of interest, there simply is no evidence to support movant's contention. Furthermore, the transcript of the plea of guilty, States [sic] Exhibit 1, refutes the contention that the plea was involuntary. The transcript denotes that movant was questioned as to the fact that he and he alone was the only person who could enter a plea of guilty and that it was his decision to plead guilty.
>
> It should be noted that movant was the actual holder of the gun, and that the two co-defendants, who received lesser sentences, were the driver of a car and the individual originally setting up the offense. Movant received a sentence which was in fact the minimum sentence that could be assessed for Robbery First Degree.
>
> Movant's contentions are without merit and are rejected.

Respondent's Exh. C at 75.

We find and conclude that the State trial court reliably found the relevant facts and that the memorandum decision denying postconviction relief was consistent with the principles of controlling federal constitutional law.

### III.

#### A.

The State trial court cited and relied on *Williams v. State*, 615 S.W.2d 487 (Mo. App.1981), which held: "Absent a showing of actual conflict, movant was not entitled to a new trial." While *Williams* did not cite any federal cases to support that conclusion, it is clear that the *Williams* court was familiar with and applied federal standards to the factual circumstances of that case. For *Williams* cited the Supreme Court of Missouri's landmark case of *Seales v. State*, 580 S.W.2d 733 (Mo.1979) (en banc), in which that court expressly adopted the Sixth Amendment ineffective assistance standard articulated by the Eighth Circuit. In addition, *Williams* considered and distinguished *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir.1960), *modified*, 289 F.2d 928 (5th Cir.), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961), on the facts.

#### B.

Petitioner's post-hearing memorandum of law filed in the Rule 27.26 proceeding relied primarily on *LaFrance v. State*, 585 S.W.2d 317 (Mo.App.1979), a case in which the Missouri Court of Appeals granted postconviction relief based in part, but only in part, on *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).[2] *Holloway v. Arkansas* applied principles stated forty-five years ago in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). It concluded that the following principle stated in *Glasser* "emerges" without ambiguity: "Requiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel." 435 U.S. at 482, 98 S.Ct. at 1178. The Court added that the principle stated in *Glasser* "recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed,

---

**2.** By way of dictum, *LaFrance* suggested that the majority opinion in *Seales* "reflects an acceptance by our court of a per se rule in conflict of interest situations" (585 S.W.2d at 322), citing *Seales*, 580 S.W.2d at 736. Examination of page 736 of *Seales* shows that the Supreme Court of Missouri was merely quoting dictum from the Eighth Circuit's discussion of *Holloway v. Arkansas* in *Reynolds v. Mabry*, 574 F.2d 978, 980 (8th Cir.1978). As will be noted in the text, it is clear that *Holloway v. Arkansas* did not, as the dictum of *LaFrance*, and perhaps the dictum of *Reynolds v. Mabry* may suggest, establish a per se rule in conflict of interest cases.

in some cases, certain advantages might accrue from joint representation." *Id.*

*Cuyler v. Sullivan,* 446 U.S. 335, 345, 100 S.Ct. 1708, 1716–17, 64 L.Ed.2d 333 (1980), establishes that the Court had "expressly reserved" the following two issues when it decided *Holloway v. Arkansas,* (1) "whether a state trial judge must inquire into the propriety of multiple representation even though no party lodges an objection" and (2) "whether the mere possibility of a conflict of interest warrants the conclusion that the defendant was deprived of his right to counsel."

*Cuyler v. Sullivan* answered the first question in the negative, holding that "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Id.* at 347, 100 S.Ct. at 1717. The second question was also answered in the negative. The Court held that in "order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" *id.* at 348, 100 S.Ct. at 1718; that "the possibility of conflict is insufficient to impugn a criminal conviction" *id.* at 350, 100 S.Ct. at 1719; and that in "order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."[3] *Id.*

We find and conclude that the petitioner made no objection to his appointed counsel's joint representation of him and of the other two defendants before he was sentenced on his voluntary plea of guilty. We further find and conclude that petitioner failed to demonstrate any actual conflict of interest adversely affecting his lawyer's performance which in any way prejudiced the petitioner under the circumstances of this case.

The State trial court's failure to make inquiry into the propriety of appointed counsel's multiple representation in the absence of any objection by the petitioner or by either of the other two defendants, does not, under *Cuyler v. Sullivan,* establish a ground for postconviction relief. The fact that multiple representation is constitutionally permissible does not mean that appropriate procedures should not be promulgated and followed in order to reduce the possibility of constitutional error that may occur under the circumstances of particular cases in which multiple representation is permitted.[4]

Shortly after *Holloway v. Arkansas* was decided in 1978, the Supreme Court, in the exercise of its supervisory power, amended Rule 44 of the Federal Rules of Criminal Procedure by adding subdivision (c) entitled "Joint Representation" which provides that:

> Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

The Notes of the Advisory Committee on Rules appropriately noted that new "Rule 44(c) establishes a procedure for avoiding

---

**3.** *Cuyler v. Sullivan* cited *Dukes v. Warden, Connecticut State Prison,* 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972), with approval. *Dukes,* decided six years before *Holloway v. Arkansas* was decided, involved factual circumstances not dissimilar from those presented in this case. *Cuyler v. Sullivan* appropriately stated that the Court's affirmance of the denial of habeas corpus relief in *Dukes* was based on the fact that the State prisoner failed to "identify an actual

lapse in representation." 446 U.S. at 349, 100 S.Ct. at 1719.

**4.** That numerous problems can and do arise in multiple representation cases is demonstrated by the numerous cases, both State and federal, that have applied the principles stated in *Glasser* since that case was decided in 1942.

the occurrence of events which might otherwise give rise to a plausible postconviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to effective assistance of counsel." Fed.R. Crim.P. 44 Advisory Committee Note. The Notes also make clear that although a "rule 44 inquiry is required whether counsel is assigned or retained" (*id.*), the "failure in a particular case to conduct a rule 44(c) inquiry would not, standing alone, necessitate the reversal of a conviction of a jointly represented defendant." *Id.*

Many federal trial courts, in order to eliminate potential plausible Section 2255 postconviction claims, followed the procedures now mandated by Rule 44(c) before that subdivision was added to the rule in 1979. We are satisfied that many State trial courts presently follow the same procedures to eliminate potential plausible Rule 27.26 postconviction claims.

In light of the favorable experience in the federal system with Rule 44(c), we are confident that the Supreme Court of Missouri will give appropriate consideration to whether, in the exercise of its supervisory power, it should adopt a rule similar to that of the amended federal Rule 44(c).

### C.

It was proper under the circumstances of this case for Judge Conley to make reference to the transcript of the petitioner's plea of guilty.[5] For the petitioner testified at the Rule 27.26 hearing that he voluntarily pled guilty because he was in fact guilty.[6] Further, there can be no question that petitioner knew from the time of the preliminary hearing that David Strauss of the Public Defenders Office was representing all three defendants. *See* Exhibit D at 3, 9, and 14. Petitioner not only did not complain about that representation, he confirmed at the Rule 27.26 hearing, *id.* at 12–14, that he gave the following answers

---

**5.** *See* Exhibit C, pages 33–44 for the exemplary manner in which that proceeding was conducted.

**6.** The Rule 27.26 transcript shows that the petitioner was asked and answered the following

to the following questions at the time he entered his plea of guilty:

Q Mr. Moore, you have been represented in this matter by the Public Defender, Mr. Strauss. Have you had a chance to meet with him and to receive his advice and his counsel?

A Yes, sir, I have.

Q Is there anything at all that you have asked him to do for you which he refused to do?

A No, sir.

Q Do you have any complaints about the manner in which he's represented you?

A No, sir, I don't.

. . . . .

Q Do you understand while Mr. Strauss can give his advice that he thinks you should plead guilty, that you are the only one that can actually make this decision?

A Yes, sir.

Q Is it in fact your decision to plead guilty?

A It is my decision, sir.

Respondent's Exh. C at 39–42.

It was also proper for Judge Conley to direct attention in his memorandum opinion to the fact that petitioner "received a sentence which was in fact the minimum sentence that could be assessed for Robbery First Degree." Exh. C at 75. For the Court in *Dukes* made reference to similar factual circumstances in that case. *See* 406 U.S. at 256 n. 3, 92 S.Ct. at 1554 n. 3.

The total absence of any substantial basis for petitioner's claim for postconviction relief is illustrated by his refusal to answer the final questions asked him on cross-examination at the Rule 27.26 hearing:

Q. Really what you're upset about, Mr. Moore, is the fact that these other two defendants got probation and you didn't; is that correct?

---

questions: "You decided that you would rather plead guilty and take the ten years which was a certain result, didn't you? Yes, sir. And you pled guilty because you were guilty, didn't you? Yeah." Respondent's Exh. D at 15.

A. I'll plead the fifth on that.

Q. Plead the fifth? That's the only reason you're upset. It's the only reason we're here today, isn't it? And you're angry with yourself because you've made what you think in hindsight was a bad decision; is that right? Are you going to answer the question?

A. No, sir.

Respondent's Exh. D at 15–16.

The petitioner did not, in fact, make a "bad decision"; his trial counsel obtained the best possible result for him that could have been obtained under the undisputed circumstances of this case.

Our examination of the documentary evidence establishes that the State trial court reliably found the facts and that it properly applied the controlling federal principles of law when it denied petitioner's claim for postconviction relief.

Accordingly, it is

ORDERED (1) that petitioner's petition for habeas corpus should be and the same is hereby denied. It is further

ORDERED (2) that the Clerk, in accordance with Rule 58 of the Federal Rules of Civil Procedure, prepare on a separate document and enter final judgment against the petitioner and for the respondent. It is further

ORDERED (3) that in the event the petitioner should elect to file a notice of appeal from the final judgment entered in accordance with Order (2) above, the Clerk shall promptly so advise this Court in order that it may either issue the certificate or the statement required by Rule 22(b) of the Federal Rules of Appellate Procedure before the notice of appeal is forwarded to the Court of Appeals.