Walter Clifton MASON, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 55935.

Supreme Court of Missouri,
Division No. 2.

June 28, 1971.

**618**

Ronald M. Sokol, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

John C. Danforth, Atty. Gen., Jefferson City, for respondent.

PRITCHARD, Commissioner.

Appellant, under Rule 27.26, V.A.M.R., seeks to vacate and set aside a judgment of conviction of second murder entered February 4, 1964, with a ten-year sentence in the Department of Corrections. Embodied in three points are appellant's contentions that he was denied effective assistance of counsel at his trial: His counsel also represented codefendants whose interest conflicted with appellants; his counsel conducted the defense in a wholly inadequate and incompetent manner; and his counsel failed to perfect an appeal after being requested to do so. The second point is that the police and prosecutor knowingly suppressed evidence beneficial to appellant, namely, a written confession of guilt by a third person to the crime for which appellant was convicted.

At the time of this hearing, appellant testified he was 23 years of age. He was represented at his trial by Mr. Richard Kirwan, who saw him once before trial for about one-half hour. Appellant told Mr. Kirwan the only witness he wanted at his trial was his sister. Mr. Kirwan was "supposed to have represented the young lady that was on the case with me, Bernice Smith." The only thing appellant discussed with Mr. Kirwan about a written statement taken from appellant was that "he come down and asked me to cop out the second degree murder for a five-year term and a bench parole. At the time I felt I was not guilty." They spoke of confessions and statements that appellant had allegedly made to the members of the Kansas City Police Department. Appellant explained to Mr. Kirwan that he was somewhat tricked into signing the statement,

thinking that he would be able to help his brother, not knowing what he was getting into, "[A]nd after we discussed this a few minutes, he told me to stay with the statement that I had made and he was sure that I would beat the case." Appellant denied making any oral statements to the police, but during his trial two police officers testified as to oral statements he made to them in addition to the written statement which was introduced into evidence. He denied recalling being informed by the police that he did not have to make any statement at all, or that if he did make a statement it could and would be used against him during trial. Appellant identified a signed statement, and his signature thereon, which was introduced at his trial. This statement appears in the original transcript and contains appellant's affirmative answer that he had been advised that he did not have to make a statement and, if he did, anything he might say might be used against him. In substance in the statement, appellant admitted being involved in a fight with deceased, but denied using any kind of a weapon. On this hearing appellant remembered signing the statement, "but under the fact that I was told where to put 'yes' and where to put 'no'," as to being advised that he did not have to make a statement, or that it could be used against him. He was told by Bernice Smith what to say in the statement.

Appellant remembered that two police officers interviewed him while he was in the Jackson County jail. These officers testified against appellant during his trial. At the time of the interview he did not have an attorney, and neither the officers, a magistrate, nor a circuit judge offered to obtain counsel for appellant if he so wished.

After appellant had been convicted and a pre-sentence investigation report had been returned, and after he had received his sentence, he testified that he asked Mr. Kirwan to appeal, "but I don't know if he appealed it or not." Mr. Kirwan spoke of

a parole, and appellant appeared before the Jackson County Parole Board which denied probation. Appellant believed, but was not sure, that he again spoke with Mr. Kirwan about an appeal. He never told him he did not want to appeal.

At the instance of Chaplain Krone, while appellant was in the Department of Corrections, two officers of the Kansas City Police Department, Lloyd De-Graffenreid and Sylvester Young, came to the prison to reinvestigate the case. According to appellant, Father Krone got a report "where the young lady made a statement as to something pertaining to my brother in this incident, and if I recall correctly—." When appellant was convicted he had not quite completed the eighth grade of school, and he had never been involved in criminal proceedings.

On this hearing Lloyd DeGraffenreid testified that he received a letter from a chaplain at the penitentiary stating that appellant had told him that his brother, Robert Mason, had committed the crime for which he was in the penitentiary. De-Graffenreid went to the Missouri Reformatory and took a statement from Robert Mason, "in which, as I recall now, he actually admitted committing this crime, and I also went back to the Missouri Penitentiary and took a statement from Walter." Robert stated that "his brother was at the scene but was not the one who actually had struck this victim with the rock. I believe the victim was killed with a rock." Upon returning to Kansas City DeGraffenreid turned the information over to the prosecutor's office. This occurred in the early part of 1965, after appellant had been convicted and sentenced. DeGraffenreid testified further that in the original investigation he arrested appellant, interviewed at least one or two witnesses and took some statements. On cross-examination, he stated that one statement was from Bernice Smith in which she stated that Robert Mason was the one who struck the victim with the rock and the only part played by

appellant was to stab the victim with a small knife.

The transcript of proceedings in the Magistrate Court shows that appellant and Bernice Marie Smith were jointly charged, and that they were represented by their attorney, Mr. Richard B. Kirwan. The testimony at that hearing indicates that Bernice struck the victim with a knife, the blade of which broke, and Robert struck him with a rock, and Bernice also dropped the rock on the victim's head. As far as Bernice had said, appellant did not have anything to do with it. It also came out in this hearing that appellant admitted to DeGraffenreid that he was present when Donald Wilson (the victim) hit Robert Mason, and he, appellant, did take part in the assault by striking the victim with the brick.

In the transcript of the trial is contained the testimony of Detective William Frank Linhart, who took a statement from appellant, first advising him that he did not have to give a statement and that anything he said could be used against him. In it appellant stated he was not exactly involved in the assault, but he did hit the victim once with his hand. He did not use any kind of weapon.

Appellant told Bernard Thomas a short time after the assault that the victim had hit him with a brick and that appellant had hit the victim and stabbed him in the back. Appellant admitted orally to Officer Bert Cool that he was in the fight and that he had struck the victim with a rock. A rock weighing about 25 pounds was received in evidence as being found at the scene, and Corp. Donald E. Lyon of the police laboratory found from his examination of it that there was blood and also human hair on it. In testifying in his own behalf, appellant admitted that he was in the altercation with deceased by grabbing him, and Bernice Smith stabbed the victim and hit him with a rock after he fell. He denied hitting him in the head with a rock, or that he told Officer Cool that he did. He ad-

mitted on cross-examination that he struck deceased with his fist.

By Instruction No. 3 the court instructed the jury that all persons are equally guilty who act together with a common intent in the commission of a crime, and a crime so committed by two or more persons jointly is the act of all and each one; and that when two or more persons knowingly act together in the commission of an unlawful act or purpose, then whatever either does in furtherance of such unlawful act or purpose is in law the act and deed of each of said persons.

At the time of the hearing on appellant's motion for new trial it was stated by Mr. Kirwan (whom the parties stipulated to be deceased) that appellant's brother was discharged in Magistrate Court on account of insufficient evidence and that Bernice Smith was tried to a jury and was acquitted. Counsel also stated, "[A]nd I understand now that Walter has filed application before the parole board for parole, and due to his age, the board might look with favor upon his application, I don't know. He tells me he doesn't want to appeal it, he wants to go before the parole board."

With respect to Bernice Smith's role in the incident out of which arose appellant's charge, Mr. Kirwan brought these matters out during the trial: On cross-examination of Officer Linhart: "Did she—she admitted this killing, didn't she? A. Not to me that night, sir. Q. But she did later on? A. It is my understanding she did. Q. She admitted that she did the stabbing? A. That she did the stabbing, yes, sir. * * * Q. You had talked to the other two people at that time, hadn't you— A. That is correct. Q. —or had you? Had the girl admitted it at the time you called Walter, that she did the act? A. No, sir, she did not. Q. When was it she admitted that to you? A. To my knowledge it was on the 8th, November the 8th. Q. She admitted—did she admit she hit him with this rock? A. Again, to my knowledge, I did not see the statement, she

admitted being in a fight. As to what she used or what weapon, I couldn't say, sir. I never did talk to her on the 8th." On appellant's direct examination at trial, Mr. Kirwan brought out this: "A. My brother hit him back. The next thing, I saw Bernice, she ran up behind him and I don't know if she stabbed him, but she said she did. [Objection, not ruled upon.] Q. (By Mr. Kirwan) Don't say what she said; that's improper. Do you know how he got those bruises on his head? A. Well, when she ran up behind him he fell and the next thing I knew she picked up the brick and threw it on his head." And while Bernard Thomas testified that Bernice was with him in Barclay's Cafe and the Rhythmland Bowling Alley at the time of the altercation with deceased, it was later brought out by the prosecution that Thomas had a conversation with appellant: "Q. What else did he (appellant) tell you? A. They were afraid for his brother, because his brother had a federal case. Q. Whose brother? A. Walter's had a federal case, so they didn't want to involve him, so Bernice said she would say she stabbed him. Q. What else did they tell you? A. Walter would say he hit him with the brick."

■ The mere fact that there was dual representation of appellant and Bernice Smith, who were initially charged jointly, does not make that representation illegal *per se*. United States v. Williams (C.A. 8th), 429 F.2d 158, 161. The inquiry here must be whether a conflict of interest of counsel, Mr. Kirwan, actually existed as between his two clients. There must have been done something by counsel in the trial, or something which was foregone by counsel and lost to appellant, which was detrimental to him and which was advantageous to his codefendant, Bernice Smith. As is shown by the transcript of the Magistrate Court proceedings, the evidence at that stage indicated that both defendants were implicated in the affray resulting in deceased's demise, and such was certainly sufficient to bind them over to Circuit

Court for trial. At this stage, except for the bit of evidence that appellant did not have anything to do with the death, the interests of the codefendants were practically identical.

What is noteworthy here is the fact that appellant was tried separately from Bernice Smith. And while it is conceivable that a detrimental effect upon a separately tried defendant can come about by a conflict of interest of counsel, and result in ineffective assistance of counsel, the cases cited by appellant show that something occurred in the joint trial of codefendants which resulted from conflicts of interest. So it was in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. There two codefendants were jointly charged with conspiracy to defraud the United States. One codefendant, over objection, had appointed for him counsel whom the other defendant had previously engaged to defend himself. It was suggested to the court that the defenses of the two defendants were inconsistent such as testimony inadmissible as to one defendant was allowed without objection by the attorney on his behalf because of the attorney's desire to avoid prejudice to the other defendant. In Glasser, it is thus clear that the conflict of interest initially existed, and this led to the court's statement, "To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." (62 S.Ct. 467.) A similar conflict of interest was found to exist in People v. Chacon, 69 Cal.2d 765, 73 Cal.Rptr. 10, 447 P.2d 106, because of the inhibiting of counsel in making arguments and presenting evidence that one jointly tried client might be less culpable than others, and deserving of less penalty. In Larry Buffalo Chief v. State of South Dakota

(C.A.8th), 425 F.2d 271, counsel's conflict of interest as among the jointly tried defendants lay in the fact that he failed to exploit witness Osborne's testimony which might have tended to exonerate Buffalo Chief. Conflicts existed in other cases cited by appellant such as Porter v. United States (C.A.5th), 298 F.2d 461; United States ex rel. Martinas v. Brierley (D.C. Pa.), 273 F.Supp. 260. In contrast, in United States v. Williams, supra, it was held that no conflicts of interest were shown.

■ Appellant argues that counsel's failure to call Bernice Smith as a witness to repeat her confession which was received in evidence in Magistrate Court, or to be impeached by it before a jury, shows a conflict of interest. He says that confession exculpated him: "In such circumstances, knowing that she would refute the confession and he could not endanger her for her own subsequent trial on the same charges, Movant's attorney was faced with a conflict of interest between the two defendants." As above noted, the alleged admissions of Bernice Smith were fully brought before the jury by appellant's obviously diligent counsel. As suggested by the state, it is difficult to see how appellant's case could have been helped by placing Bernice on the witness stand where she might either deny making the admissions or claim her privilege of self-incrimination. In the light of this situation, counsel for appellant did all he could do in presenting appellant's defense. Nothing was done to protect Bernice to the disadvantage of appellant. The contention is overruled.

■ Appellant claims further that he had ineffective assistance of counsel in four respects. The first is encompassed in appellant's testimony that Mr. Kirwan spent about one-half hour consulting with him prior to trial. The transcripts of all the proceedings indicate that counsel was fully aware of the facts in the case and appellant's defenses. In pre-trial confer-

ence he advised appellant to stand on his statement, exculpatory in nature. At trial appellant's own testimony was exculpatory. Appellant does not suggest that by reason of any lack of sufficient opportunity to consult with counsel prior to trial resulted in a loss of, or a dilution of, a defense. The mere fact in itself that counsel spent a short time in interviewing his client does not show inadequacy of counsel. Kress v. United States (C.A.8th), 411 F.2d 16. The second claim is that counsel erred in placing him on the witness stand. Again appellant's testimony was exculpatory in nature. No prejudice appears. The third claim is that his counsel should have called his brother, Robert Mason, as a witness because he admitted to Detective De-Graffenreid that he actually committed the killing and exonerated appellant as a mere bystander. This information received by DeGraffenreid was given to him long after the trial. As argued by the state, the records show that appellant was attempting to shift attention away from his brother. It is not shown that a contrary situation existed at the time of trial to the knowledge of counsel. In State v. Worley, Mo., 383 S.W.2d 529, 532[3], it was held by this court that it would not speculate or second-guess counsel's reasons or judgment in determining which witnesses to call. The fourth claim is that counsel should have requested an expansion of the court's instruction on self-defense to include the protection of members of his immediate family. Under the facts elicited, where the victim encountered adversaries three in number, counsel cannot be faulted for failing to request an instruction on appellant's right to defend his brother. None of appellant's further contentions that his counsel was inadequate are of any merit.

■ Contrary to appellant's testimony that he requested his counsel to appeal and he failed to do so is the record entry at the time of appellant's sentencing showing Mr. Kirwan's statement that appellant did not want to appeal. The record and appellant's testimony conflict, and therefore the trial court's ruling on such contention is not clearly erroneous.

■ The last point of appellant is that the police and prosecutor knowingly suppressed evidence of a confession of a third person of the commission of the crime for which appellant was convicted. All of the evidence shows that the purported confession of Robert Mason came to light long after appellant was convicted. There is no evidence that the prosecution had any such evidence at or before the trial. See State v. Statler, Mo., 383 S.W.2d 534, holding that evidence of false testimony learned years after trial was no basis for vacating a sentence unless at the time of trial the prosecution was aware that the testimony was false.

The trial court's rulings on all of appellant's points are not, under this record, clearly erroneous, and consequently the judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

DONNELLY, P. J., and MORGAN, J., concur.

HENLEY, Alt. J., concurs in result.

FINCH, J., not sitting.