STATE of Missouri, Plaintiff-Respondent,

v.

Jerry Wells RISINGER,
Defendant-Appellant.

No. 10357.

Missouri Court of Appeals,
Springfield District.

Jan. 31, 1977.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 15, 1977.

Application to Transfer Denied
March 14, 1977.

John D. Ashcroft, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Paul Crider, Jr., Public Defender, John S. Beeler, Asst. Public Defender, Rolla, for defendant-appellant.

TITUS, Judge.

A jury convicted defendant of receiving stolen property (4 quarter barrels of beer) with a value of at least $50 and fixed punishment at 2 years' imprisonment. §§ 560.270 and 560.161–1(2), V.A.M.S. The question on appeal is whether, because of his lawyer's representation of a client with interests antagonistic to defendant, there was a violation of defendant's Sixth Amendment right to representation by counsel whose assistance is untrammeled and unimpaired.

Steve Matlock, Rocky Fore and Ricky Fore (so Matlock and Rocky testified) burglarized a distributor's premises in mid-June 1975 and stole 14 cases and 10 quarter barrels of beer. They hid the loot in some woods near Rolla. Accompanied by friends, the burglars returned to their cache the next day and, inter alia, sold two of the quarter kegs to Brian Kridlebaugh. Over objection, the court permitted some of the state's witnesses to relate the hearsay that Kridlebaugh told them he later returned to the woods and stole two more of the quarter kegs. Also over objection that the testimony was inadmissible because it constituted proof of defendant's guilt of crimes separate and distinct from the one charged, state witnesses recounted how they had sold the defendant various items of stolen property (not the quarter barrels of beer in question). Kridlebaugh did not testify but some of the witnesses said that when they had been in defendant's home they had seen one or two quarter barrels of beer which defendant acknowledged had been purchased from Kridlebaugh knowing it to be stolen property.

Matlock was charged with the crimes committed at the beer distributor's premises. In connection therewith, he was represented by the public defender. A deal was made that if Matlock pleaded guilty and testified against defendant for receiving stolen property, execution would be stayed on the sentence imposed and Matlock would be placed on probation. In July 1975 Matlock entered a plea of guilty and was released on probation. When defendant was

charged with the crime under consideration, the same public defender who represented Matlock was appointed to represent defendant. On the day of defendant's trial, March 10, 1976, the public defender filed a motion to withdraw as defendant's counsel due to a conflict of interest. At a bench conference between the court and lawyers for the state and defendant, the court denied the request principally, as it opined, because Matlock's confidential communications to the public defender regarding Matlock's juvenile record would not be admissible for the purpose of impeaching Matlock as a witness.

■ The federal constitution guarantees to persons accused of a crime in the state courts the right to representation by counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963). This guarantee entitles an accused to a lawyer who can render faithful service and give undivided loyalty. A lawyer who is forced or who attempts to serve clients with conflicting interests cannot give unto either the loyalty each deserves. *State v. Crockett,* 419 S.W.2d 22, 29[14] (Mo.1967). Denial of a defendant's constitutional right surely results if his attorney represents conflicting interests without his assent and knowledge, and a showing of actual prejudice is not required if there is a showing of a conflict. *United States ex rel. Miller v. Myers,* 253 F.Supp. 55, 57[1, 2] (E.D.Pa.1966). "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680, 702 (1942). An accused's "right to counsel under the Constitution is more than a formality, and to allow him to be represented by an attorney with . . . conflicting interests . . . without his knowledgeable consent is little better than allowing him no attorney at all. [Such a] situation is too fraught with the danger of prejudice, prejudice which the cold record might not indicate, that the mere existence of the conflict is sufficient to constitute a violation of [the accused's] rights whether or not it in fact influences the attorney or

the outcome of the case." *United States ex rel. Miller v. Myers,* supra, 253 F.Supp. at 57. "An attorney who represents both the defendant and a prosecution witness in the case against the defendant is representing conflicting interests. . . . There is, however, no deprivation of constitutional right if the defendant knowingly consents to being represented by an attorney who also represents a prosecution witness." *Ciarelli v. State,* 441 S.W.2d 695, 697[2] (Mo.1969); Annot., 27 A.L.R.3d 1431–1441.

■ The state initially argues there was no deprivation of defendant's constitutional right to representation by counsel whose assistance is untrammeled and unimpaired because defendant knowingly consented to representation by the same public defender who represented Matlock. We do not agree. As pointed out by the state, the record does disclose that defendant was in the courtroom when the public defender filed his motion to withdraw as counsel because of a conflict of interest. However, the record also shows that the filing of the motion and the subsequent discussion concerning it was done at a bench conference outside the hearing of the jury. Any lawyer with trial experience will attest that it would be an extremely novel and unprecedented act for a layman-client to participate in a bench conference between court and counsel. The mere presence of defendant in the courtroom is not proof of his awareness of the proceedings taking place at a bench conference. There was no evidence, as there was in *Ciarelli v. State,* supra, 441 S.W.2d at 697, that defendant had been told by his counsel that he represented a prosecution witness; neither had defendant been informed of the situation or of his constitutional rights by the trial judge. The consent necessary to obviate an apparent deprivation of a constitutional right must come from assent voluntarily given with a knowledge of the facts. The consent is not to be inferred from silence. *State v. Cox,* 539 S.W.2d 684, 687 (Mo.App. 1976). "It is understandable that a criminal defendant, not necessarily familiar with all of his constitutional rights, and not informed of the same by the trial judge when

the dual representation became apparent, might not interrupt his trial to request that his attorney be relieved even if he was made aware during the course of the trial that a prosecution witness was a client of his attorney." *United States ex rel. Williamson v. LaVallee,* 282 F.Supp. 968, 971[5] (E.D.N.Y.1968).

The state additionally urges that no conflict of interest existed because when Matlock pleaded guilty to the crimes committed at the beer distributor's premises this ended the attorney-client relationship between the public defender and Matlock, leaving the public defender to conduct his trial defense of defendant free of any conflicting obligations. We cannot agree with this conclusion.

■ In the first place it appears to us the trial court erroneously opined that a conflict of interest did not exist because the public defender could not in any event employ his knowledge of Matlock's juvenile activities gained through privileged or confidential communications to impeach Matlock as a witness. Rules of credibility are generally the same in criminal and civil cases [*State v. Turner,* 320 S.W.2d 579, 585[14] (Mo.1959)], and while a witness may not be impeached by showing he has been convicted of a criminal offense in a juvenile court [*State v. Tolias,* 326 S.W.2d 329, 333[2] (Mo.1959); *State v. Ball,* 527 S.W.2d 414, 416[2] (Mo.App.1975)], he may be impeached by questions to which the answers affect his credibility as a witness albeit the questions relate to activities when the witness was a juvenile. Thus, cross-examination of a juvenile witness as to his confinement in a home for boys and the reasons therefor did not violate the rule that a witness may not be impeached by showing a juvenile "conviction," where the witness was not asked if he had been convicted, but merely stated that he was on probation at one time and had accepted stolen money. *Ward v. Goodwin,* 345 S.W.2d 215, 219[5] (Mo.1961). Also, where a juvenile witness was asked if he had participated in and confessed to a robbery, the question was ruled proper and it was held

that the credibility of the witness could be impeached in that fashion. *Barnard v. Wabash R. Co.,* 208 F.2d 489, 496–497[20, 21] (8th Cir. 1953).

■ While Matlock's guilty plea was a matter of record available to the public defender for impeachment purposes, if Matlock chose to lie or improperly embellish his testimony concerning other matters or his assertion that he had sold a stolen CB radio to defendant, a vigorous and thorough cross-examination of Matlock would be imperative to impugn his credibility as a witness. It takes no great imagination to detect the dangers that faced defendant by being defended by the same public defender who represented Matlock. In this instance the obvious danger to defendant was that the scope of the examination of Matlock would be materially restricted by the fact that the public defender, as he so informed the court, had learned confidential information about the juvenile activities of his client-witness which he could not ethically reveal. *United States ex rel. Williamson v. LaVallee,* supra, 282 F.Supp. at 971. The confidentiality of attorney-client communications persists after sentencing of the client. *People v. Ryan,* 30 Ill.2d 456, 197 N.E.2d 15, 17[2] (1964). So we have a situation where a defendant is represented by counsel thrown into a position of ambivalence. The impossibility of representing a defendant with undivided allegiance becomes inherent in a situation where the attorney, because of confidential information obtained from a prosecution witness, has to reef his sails with a resulting lack of unfettered freedom to thoroughly and effectively cross-examine and impeach the witness. *People v. Halluin,* 36 Ill.App.3d 556, 344 N.E.2d 579, 582[3] (1976).

■ A second danger in being represented by an attorney who also represented a prosecution witness comes to light in the facts unique to this case. Matlock not only pleaded guilty to the crimes committed at the beer distributor's in exchange for probation if he would testify against defendant, but he also testified he had sold stolen property to defendant. It is reasonable to

assume that Matlock's continued freedom on probation or his apparent immunity from prosecution for stealing the CB radio he allegedly sold to defendant might depend on his performance at defendant's instant trial or subsequent trials on additional charges. Consequently, on the one hand the public defender had a continuing duty not to degrade the value of Matlock's cooperation with the state so as to assure the success of his probation or his freedom from prosecution for stealing, while on the other hand the attorney was required by his professional duty to the defendant to attack Matlock's credibility in every proper or conceivable manner. *People v. Augustus,* 36 Ill.App.3d 75, 343 N.E.2d 272, 273 (1976). Also see *People v. Johnson,* 46 Ill.2d 266, 265 N.E.2d 869, 870 (1970); *People v. Ware,* 39 Ill.2d 66, 233 N.E.2d 421, 422 (1968). Under these and other circumstances enumerated, it cannot be said that defendant received the undivided allegiance of his counsel.

The judgment is reversed and the cause is remanded for a new trial.

All concur.