**Ralph D. GORDON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD34930.**

Missouri Court of Appeals,
Western District.

Jan. 22, 1985.

John Kurtz, Popham, Conway, Sweeny, Fremont & Bundschu, P.C., Kansas City, for appellant.

John Ashcroft, Atty. Gen., R. Brooks Pitchie, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, J.P., and SHANGLER and CLARK, JJ.

DIXON, Judge Presiding.

Movant appeals the trial court denial of his motion under Rule 27.26 to vacate the judgment of guilt of murder in the first degree and the life sentence imposed by the trial court.

A single issue is determinative of the appeal. Movant contends the public defender's office had a conflict of interest because it represented movant and a key witness for the prosecution. Finding a conflict of interest and that, as a matter of law, that conflict rendered the public defender ineffective as movant's counsel, the trial court judgment is reversed.

Movant was convicted in a jury trial conducted in early 1974. He was found guilty of felony murder in the robbery and shooting of a man who had been seeking prostitutes in the area of 30th and Prospect in Kansas City, Missouri. The conviction was affirmed on direct appeal. *State v. Gordon*, 527 S.W.2d 6 (Mo.App.1975). The proof of movant's conviction, aside from proof of the victim's death, came from several state's witnesses. One Roberts testified movant was in the area on the evening and early morning in question. The witness claimed movant requested him to join in the robbery of two persons in a "Mustang" automobile early in the evening and

that later, around 2:00 or 2:30 a.m., movant took him to where the victim's Oldsmobile was later found with the victim in the trunk and told the witness he had robbed and killed someone and put the body in the trunk. Willie Flowers, a male prostitute and female impersonator testified he had solicited the victim and ridden around with him in the victim's car. Flowers did not have any sexual activity with the victim because the victim had only six dollars. Flowers said he saw the victim continue to "cruise" the area for several hours. Flowers also said one Michael Glover had taken him home about 5:00 a.m. and, on the way, Glover showed him a black car and said the owner of the car was dead and in the trunk of the vehicle. Herbert Martin testified he had stolen a .38 caliber gun from an automobile and on the night in question had left the gun in the hands of movant. He further related the weapon was returned to him, with one shell spent, in the early morning hours. Martin said he sold the gun later that same day to an unknown purchaser. There was evidence, from witnesses at the scene where the victim's car was found, that two men had spent a long time, until about 5:00 a.m., attempting to move the car. One of the witnesses heard a gunshot-like noise around 5:00 a.m.

A witness named Greer testified that movant attempted to solicit his aid in robbing the victim and that he saw movant enter the victim's vehicle and leave with the victim. Greer variously stated the time of this incident from 1:30 a.m. to 2:30 a.m. Movant returned on foot in about an hour and entered Michael Glover's vehicle in which Greer and Glover were sitting and told them he had robbed and shot the victim. Movant displayed the weapon and claimed it had malfunctioned. Later Greer, Roberts, and movant went to the location of the victim's car and movant requested that Greer assist in stripping the tires from the victim's vehicle, which he refused to do. The witnesses' accounts have a variety of discrepancies and contradictions, except for Martin's testimony about the weapon.

Movant contends that appointed counsel, the public defender, was involved in a con-flict of interest unknown and unconsented to by movant and movant was thereby deprived of effective assistance of counsel.

The factual support for this contention was developed in the Rule 27.26 proceeding. Movant's counsel put in evidence the files of the public defender's office and of the circuit court concerning charges against the witness Martin. From these files, it appears that Martin was first charged with a felony in 1971. He was charged with a felony, tampering with a motor vehicle, and upon a plea, the charge was reduced to a misdemeanor. On October 31, 1973, a burglary and stealing occurred at Model Cities and on that same date Martin was charged. On December 18, 1973, Martin was arrested while shoplifting from Jones Store and charges of stealing over $50.00 were filed against him. In both cases, the proof at the preliminary hearings strongly indicated his guilt. On January 8, 1973, Martin pled guilty to the burglary and stealing charge pursuant to a plea bargain arrived at between the prosecutor's office and the public defender's office, which had been appointed as defense counsel in both cases. Martin was sentenced to three years for burglary and two for stealing and given probation for five years. The other stealing charge was dismissed. The record is silent as to whether his cooperation as a witness against movant was a factor in the plea bargain.

The indictment against movant for the September 29, 1973, murder was filed in early October 1973, and he was arraigned October 10th. The public defender was appointed, and Gary Haggerty, an assistant public defender, was assigned. Martin was listed as a witness on the indictment. The movant's case went to trial 28 days after Martin entered his plea.

Martin was arrested for another shoplifting offense, which occurred February 18, 1974. The State Board of Probation and Parole filed a report recommending revocation of his parole. This report was in evidence in the 27.26 proceeding. That report shows that Martin had been charged by the federal authorities with the forgery of a United States Treasury check. The report

and the trial transcript show that Martin is a heroine addict. The report also shows that Martin had several misdemeanor stealing convictions, which he had failed to report to his parole officer. During the period between the February 18, 1974, offense and June of 1974, various negotiations occurred with respect to Martin's continuance on probation. The parole violation was filed in connection with the January 1974 conviction and the judge handling that parole revocation and the judge handling the February 18, 1974, conviction agreed that his parole would not be revoked and that he would receive probation on the February 18, 1974, offense. The discussions resulting in this decision were influenced largely by representations by the public defender's office of Martin's assistance in testifying in the movant's murder case. Gary Haggerty, the assistant public defender who acted as trial counsel for the movant, participated directly in the effort to avoid revocation of Martin's parole and during the plea proceedings, which eventuated from the February 18, 1974, offense in June of 1974. The public defender asserted on the record Martin's role as a witness in the movant's murder trial as a basis for leniency. The federal authorities sentenced Martin to two years on a plea of guilty. The court denied revocation of his parole on the January 1974 offense and continued him on probation for that offense and the court, taking his plea on the February 18, 1974, offense, sentenced him to five years, suspended imposition of the sentence, and placed him upon five years probation concurrent with the January sentence and probation.

Movant postulates, upon the facts set forth above concerning the witness Martin, that a conflict of interest denied him effective assistance of counsel. When defense counsel is representing both a prosecution witness and the defendant, there is an inherent conflict of interest. Through the Sixth Amendment, the federal constitution guarantees the right to counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). This guarantee entitles the accused to a lawyer who can give faithful service and undivided loyalty. A lawyer who attempts to serve conflicting interests cannot properly serve with loyalty either client. *State v. Crockett,* 419 S.W.2d 22 (Mo.1967). When an actual conflict of interest appears, prejudice is presumed. *Cuyler v. Sullivan,* 446 U.S. 335, 345–350, 100 S.Ct. 1708, 1716–1719, 64 L.Ed.2d 333 (1980). Prejudice is presumed if the attorney actively represented conflicting interests and his conflicting duties affected his performance. *Cuyler v. Sullivan, supra.* This exception to the requirement of a showing of prejudice was specifically recognized in *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Based upon *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), Missouri courts have held that when defense counsel represents a prosecution witness in a related or unrelated case, an actual conflict of interest exists. *State v. Risinger,* 546 S.W.2d 563 (Mo.App.1977). That different lawyers from the same office are separately engaged in the representation makes no difference. *See, Ciarelli v. State,* 441 S.W.2d 695 (Mo.1969). *Risinger* provides a dual rationale for the finding of conflict when the lawyer represents both the defendant and the prosecution witness. *Risinger* notes first:

> The impossibility of representing a defendant with undivided allegiance becomes inherent in a situation where the attorney, because of confidential information obtained from a prosecution witness, has to reef his sails with a resulting lack of unfettered freedom to thoroughly and effectively cross-examine and impeach the witness.

546 S.W.2d at 566. *Risinger's* second rationale is squarely applicable to the instant case. The defendant Risinger was convicted of receiving stolen property. The witness Matlock pleaded guilty before Risinger's trial to the theft of the property. Matlock also told the authorities Risinger had bought a CB radio from Matlock, which Risinger knew was stolen. The *Risinger* court said:

> A second danger in being represented by an attorney who also represented a

prosecution witness comes to light in the facts unique to this case. Matlock not only pleaded guilty to the crimes committed at the beer distributor's in exchange for probation if he would testify against defendant, but he also testified he had sold stolen property to defendant. It is reasonable to assume that Matlock's continued freedom on probation or his apparent immunity from prosecution for stealing the CB radio he allegedly sold to defendant might depend on his performance at defendant's instant trial or subsequent trials on additional charges. Consequently, on the one hand the public defender had a continuing duty not to degrade the value of Matlock's cooperation with the state so as to assure the success of his probation or his freedom from prosecution for stealing, while on the other hand the attorney was required by his professional duty to the defendant to attack Matlock's credibility in every proper or conceivable manner. *People v. Augustus,* 36 Ill.App.3d 75, 343 N.E.2d 272, 273 (1976). Also see *People v. Johnson,* 46 Ill.2d 266, 265 N.E.2d 869, 870 (1970); *People v. Ware,* 39 Ill.2d 66, 233 N.E.2d 421, 422 (1968).

*Risinger,* 546 S.W.2d at 566–67.

Here, the witness Martin not only pleaded guilty to the unrelated charges but also, in his statement and testimony, admitted the theft of the weapon. Martin has never been charged with that crime and, like Matlock, his success in probation and his freedom from prosecution depended upon his cooperation. In fact, the record in the instant case demonstrates that his cooperation won him another parole on a subsequent charge and a continuation of his parole. It is notable that movant's trial counsel personally intervened to assist Martin in the parole continuation after the later charge.

The state argues first that there was no conflict of interest because movant's counsel took no action detrimental to movant and advantageous to the witness. The argument is both factually and legally flawed. The trial record demonstrates that trial counsel Haggerty failed to impeach the witness with any of his prior convictions. Because he did not raise the issue of the conviction 28 days before trial and the witness's probation on two charges in which he had been caught red-handed, there was no inquiry about any arrangement for the witness to testify in movant's case. Citing *State v. Johnson,* 549 S.W.2d 348 (Mo.App.1977), the state also notes the witness's offenses were unrelated and concluded at the time of trial. *Risinger* specifically holds that the conclusion of the witness's case does not end the attorney client relationship. *Risinger,* 546 S.W.2d at 566. The *Risinger* rationale does not depend upon the relationship or lack thereof between the witness's offense and the defendant's offense. It is the relationship of counsel to the parties that creates the conflict, not the relationship of the offenses. The conflict can exist whether the witness's case is related or not. The witness has the same interest in the disposition of his case whether it is related to the one in which he will testify or not. *State v. Johnson, supra,* relied upon by the state, involved a fact situation where the representation of the purported witness had been concluded. However, in *Johnson,* the witness' representation related to whether the witness would invoke the Fifth Amendment, which he did. *Johnson,* therefore, is not really a conflict situation since the potential witness never testified. There may be fact situations in which the representation of the witness is, in a temporal sense, so attenuated from the defendant's case that no conflict could exist. The instant case demonstrates no such attenuation.

The state also cites *Mooring v. State,* 501 S.W.2d 7 (Mo.1973), and *Mason v. State,* 468 S.W.2d 617 (Mo.1971). In *Mooring,* the defendant was aware of the dual representation and the only claim of ineffectiveness of counsel was the failure to suppress a lineup in which the codefendant was not involved in any way. In *Mason* as well, codefendants were represented by the same defense counsel. The court in *Mason* stated that the mere fact of dual representation does not create a conflict of interest. That is not in conflict with *State v. Rising-*

**892**

er, 546 S.W.2d 563 (Mo.App.1977); *State v. Cox,* 539 S.W.2d 684 (Mo.App.1976); *Ciarelli v. State,* 441 S.W.2d 695 (Mo.1969); or *Douglas v. State,* 630 S.W.2d 162 (Mo.App. 1982), all of which hold that simultaneous representation of a prosecuting witness and the defendant or of a codefendant who pleads and then testifies adversely to the defendant creates a conflict of interest, which is presumed to be prejudicial. There is no conflict because of the factual differences between the situations of codefendants and a defendant and prosecuting witness. The Supreme Court in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), quoted with approval the language in *Glasser v. United States,* 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942) (Frankfurter, J., dissenting), that in cases of multiple representation " ' "[a] common defense ... gives strength against a common attack." ' " Thus, in the multiple representation of defendants there may or may not be a conflict, depending upon the existence of a common defense. That factual difference does not exist when the dual representation involves a prosecution witness and the defendant. There is no common purpose or defense, whether the witness's offense is unrelated or whether the situation involves a codefendant who has pleaded and then becomes a prosecution witness. There is a conflict in every such case because of the differing positions and interests of the witness and the defendant. The argument and authority cited by the state are applicable to the situation where multiple defendants are represented, but have no application to the factual situation in the instant case.

Because the public defender, counsel for the movant, and the prosecuting witness were involved in a conflict of interest, movant's Sixth Amendment right to counsel was violated. It follows that the trial court's judgment denying relief on that ground is in error. The judgment is reversed and remanded with directions to vacate the judgment and sentence and afford the movant a new trial.

All concur.