### STATE of Missouri, Respondent,

v.

### Thomas KRETZER, Appellant.

### No. WD 47449.

Missouri Court of Appeals,
Western District.

March 21, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 2, 1995.

Application to Transfer Denied
June 20, 1995.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michelle A. Freund, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Defendant-appellant Thomas Allen Kretzer was found guilty by a jury of assault in the first degree, a class B felony, under § 565.050, RSMo 1986. He was sentenced by the trial judge, as a prior offender, to thirteen years imprisonment. He thereafter filed a post-conviction motion under Missouri Rule 29.15, alleging ineffective assistance of counsel. Following an evidentiary hearing, the motion court denied his motion for post-conviction relief. His appeal of both his underlying conviction and the denial of his post-conviction motion are consolidated in this court.

On direct appeal, Mr. Kretzer raises only a single issue: that he was denied due process because the trial judge failed to question him *sua sponte* about whether he waived any conflict of interest caused by the fact that his trial counsel was also representing his two co-defendants. He also raises only a single issue on appeal of denial of his post-conviction motion: that trial counsel was ineffective because he failed to subpoena Mike Holmes as a witness during the underlying trial, in that if Mr. Holmes had testified he would have provided evidence which may have resulted in acquittal of defendant. We affirm.

## I. BACKGROUND AND PROCEDURAL FACTS

The evidence adduced at trial reveals the following: On May 23, 1992, defendant Thomas Kretzer, his brother John Kretzer, and his father Ernest Kretzer[1] were present at the Corner Pocket Lounge in St. Joseph, Missouri. The victim, Paul Nash, and his friend, Mike Holmes, were also present at the bar. That evening a fight broke out in which defendant and his brother John fought with Mike Holmes inside the Corner Pocket Lounge. Mr. Nash tried to stop the fight.

Following the altercation, the owner of the bar asked everyone involved in the fight to leave the bar. Mr. Nash and Mr. Holmes were walking to their car parked across the street when they encountered defendant and his brother John. The two brothers followed Mr. Nash and Mr. Holmes. Defendant shoved Mr. Holmes in the back. Another fight then broke out between defendant and his brother John on the one side and Mr. Holmes on the other.

Defendant and his brother John kicked Mr. Holmes and struck him with a pool cue. Mr. Nash tried to break the fight up while Mr. Holmes escaped to his car. Defendant and his brother then began beating on Mr. Nash. Mr. Nash did not act physically aggressive toward defendant or his brother, but merely tried to protect himself.

Mr. Nash was knocked to the ground, where he lay unconscious in front of Mr. Holmes' car. Unaware that Mr. Nash was on the ground in front of his car, Mr. Holmes started the car and, in an attempt to escape from the Kretzers, drove over Mr. Nash, causing his death.[2]

Defendant, his brother John and his father Ernest were *not* charged with Mr. Nash's death. Defendant and John were charged and tried for assault in the first degree, a class B felony under § 565.050, RSMo 1986, and their father was charged with aiding and abetting them in the assault. The three co-defendants were represented by the same trial attorney. Neither Thomas (the defendant herein), the other defendants (his brother John and his father Ernest), the prosecu-

---

1. In order to avoid confusion, at times the Kretzers will be referred to by their first names.

2. Dr. York Silliman performed an autopsy on Mr. Nash and determined that he died from asphyxia due to chest compression. Dr. Silliman also found lacerations to his head and abraded areas on his nose and forehead which were consistent with a blunt trauma.

tor, defense counsel or the trial judge raised any issue on the record during the course of the trial as to whether a conflict of interest was created by the fact that the same attorney was representing all three defendants.

Thomas testified in his own defense. He claimed that he had been involved in the fight in the bar and when it first was renewed outside, but that he was only fighting with Mr. Holmes, not with Mr. Nash. Moreover, he claimed that he had put down the pool cue and walked to his car at the north end of the bar and that the witnesses were in error in claiming that he had hit Mr. Nash. He acknowledged during his testimony that he had been previously convicted of a felony.

Defendant's brother John did not testify. John's wife Adelpha did testify, however. She said that after defendant's father Ernest returned from the bar, he said "he kicked his head, 'I kicked it like it like a ... football.'" Ernest also testified, and in his testimony denied that he had been involved in the fight or that he had said he had kicked anything like a football.

The jury was instructed to determine whether defendant or his brother were guilty of assault, and whether their father was guilty of aiding and abetting the assault. The jury was also instructed to assess punishment as to the father if he were found guilty. However, the jury was not instructed to assess any punishment against defendant or his brother if they were found guilty. This is because they were prior offenders and the court, not the jury, determines the sentence to be given to prior offenders. § 557.036(4), (5), RSMo 1994. In order to prevent jury confusion as to why it was to determine the punishment of only one of the three defendants, and at the request of defense counsel, the trial court orally informed the jury as follows:

THE COURT: Ladies and gentlemen, the Court is also going to inform you that in the instructions as I read them you may have noticed that punishment is only being submitted to you on one defendant; that is Ernest Kretzer. And the reason that is is because the law in Missouri requires that where there is evidence of prior offenses, and there has been in this case submitted

and mentioned earlier, then punishment is not submitted to the jury on these defendants.

So just so you're not back there in the jury room wondering why the jury was instructed on punishment on one defendant and not the other two, the attorneys have agreed that I would inform you of that fact so that you would not be concerned about it.

The jury found defendant and his brother John each guilty of assault in the first degree, but acquitted their father Ernest. Defendant was sentenced by the court, as a prior offender, to thirteen years imprisonment. Only Thomas' conviction, not that of his brother, is before us on this appeal.

Defendant also appeals that aspect of denial of his Rule 29.15 motion claiming ineffective assistance of trial counsel for failure to subpoena Mike Holmes, the other person who was involved in the fight with defendant and his family. Mr. Holmes was listed as a witness for the state. He appeared in the courtroom the first two days of trial, but was not called as a witness. He failed to appear during the remainder of the trial. Defense counsel had not subpoenaed him.

Defendant contended at his Rule 29.15 hearing that Mr. Holmes would have testified that defendant was fighting with Mr. Holmes and not Mr. Nash and, thus, was not responsible for the assault on Mr. Nash. Defendant offered no testimony by Mr. Holmes, no affidavit, and no other evidence, to support his claim that Mr. Holmes' testimony would have been exculpatory, beneficial and noncumulative. The motion court found that Mr. Holmes testimony would have been cumulative, that his role in the fight was presented by other witnesses, and that while defense counsel had been ineffective in failing to subpoena Mr. Holmes, no prejudice resulted. This appeal followed.

## II. CONFLICT OF INTEREST ISSUES ON DIRECT APPEAL

### A. *The Trial Judge Does Not Have a Per Se Duty To Inquire about Waiver of a Potential Conflict of Interest*

On direct appeal, defendant asserts that he is entitled to reversal and remand for a new

trial because his counsel's concurrent representation of both him, his brother and his father constituted an actual conflict of interest which resulted in unfair prejudice to defendant in two ways: (1) it prevented counsel from effectively cross-examining defendant's father, and (2) it prevented counsel from objecting to the trial court's instruction to the jury that it would not be sentencing defendant because he was a prior offender.

■ Claims of ineffective assistance of counsel at trial cannot be raised on direct appeal. Rather, they must be raised by way of a post-conviction motion under Rule 29.15. *State v. Drewel*, 835 S.W.2d 494, 496 (Mo. App.1992). Thus, to the extent that defendant's claim is that the conflict of interest resulted in ineffective assistance of counsel, this claim is not cognizable on direct appeal. It was required to be brought, if at all, in defendant's Rule 29.15 motion. *Id.* As discussed below, defendant failed to raise this issue in his post-conviction motion.

■ No doubt aware of this rule, defendant does not complain on direct appeal that counsel was ineffective as a result of the conflict of interest. Rather, he claims that the *trial court* had a duty to *sua sponte* determine whether defendant was making a knowing and voluntary decision to waive the alleged conflict of interest which arose from the multiple representation. He alleges that the failure of the trial court to do so violated his right to due process, and thus constituted plain error. The state replies the trial court did not have a duty to make a record of waiver of the alleged conflict *sua sponte*, and, in any event, there was no conflict of interest because the co-defendants had a common defense.

The Eighth Circuit has established a requirement that in *every* federal case in which there is multiple representation the trial court must question the defendant *on the record* about whether there has been a knowing and intelligent waiver of any potential conflict of interest resulting from dual representation, and should further advise the defendant on the record of the potential danger of dual representation. *Henderson v. Smith*, 903 F.2d 534, 537 (8th Cir.), *cert. denied*, 498 U.S. 989, 111 S.Ct. 529, 112 L.Ed.2d 539 (1990).

However, the Eighth Circuit has made it clear that this requirement:

[W]as not adopted by this circuit pursuant to any constitutional authority. Instead, it was imposed on federal district courts in this circuit pursuant to this court's supervisory authority.

*Id.* *Henderson* specifically held that the requirement of an on-the-record inquiry by the trial court in every case of multiple representation as to whether defendant has waived potential conflicts of interest is not applicable to or binding on state courts. *Id.*

The United States Supreme Court has also said that the constitution does *not* impose on trial judges—state or federal—the obligation to *sua sponte* inquire whether defendant has waived any conflict of interest in every case of multiple representation. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). However, *Cuyler* did recognize that the constitution may require the trial judge to initiate such an inquiry if the trial judge has knowledge that an *actual*, rather than merely a potential, conflict of interest exists. *Cuyler* summed up the constitutional rule as follows:

Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk as may exist.... *Unless the trial court knows or reasonably should know that a particular conflict exists*, the Court need not initiate an inquiry.

*Id.* at 346–47, 100 S.Ct. at 1716 (emphasis added). *See also United States v. Gaines*, 529 F.2d 1038, 1043–44 (7th Cir.1976).

Unlike the Eighth Circuit, the Missouri Supreme Court has not utilized its supervisory authority to establish a procedural requirement that the trial courts of this state inquire into the waiver issue in every case involving multiple representation. Therefore, the trial court below had no *per se* duty to *sua sponte* conduct such an inquiry. Such a duty arose only if the trial judge knew or reasonably should have known that a particular, real conflict of interest existed.

### B. *No Duty of Inquiry by the Trial Judge Existed Here*

■ Defendant alleges that an actual conflict of interest arose at two points in the trial. First, defendant notes that his sister-in-law Adelpha testified that defendant's father Ernest stated after he returned from the bar "I kicked it like it like a ... football." Ernest denied making this statement when he took the stand. Defense counsel did not examine Ernest in an effort to impeach his denial or to flesh out this statement. Defendant now claims that a conflict-free attorney would have done so.

Defendant nowhere explains, however, how the trial judge should have known that the lack of further examination of the father was due to an actual conflict of interest. Presumably, defendant is implying that counsel should have tried to establish by further examination that his father had kicked either Mr. Nash or Mr. Holmes. However, defendant did not base his defense on a claim that it was his father rather than he who injured Mr. Nash, and he does not even so claim on this appeal. Thus, even had counsel elicited testimony implicating defendant's father, it would at best simply have resulted in conviction of all three Kretzers for the assault; it would not have served to exculpate defendant.

It is also unclear how the court should have been aware of an actual conflict on the other basis identified by defendant—his counsel's request for an instruction to the jury that it would determine his father's guilt or innocence and set his sentence if convicted, but that it would not determine defendant's sentence, if convicted, because he was a prior offender and thus his (and his brother's) sentences would be determined by the Court. Defendant had already testified that he was a prior offender. Thus, the instruction did not provide prejudicial information about defendant not already before the jury through defendant himself. On the other hand, it did explain a potentially confusing matter to the jury.

In these circumstances, we do not believe the trial court had notice that an actual conflict of interest was created by this oral instruction to the jury. The trial court was therefore not in error in failing *sua sponte* to inquire on the record as to whether defendant had made a knowing and intelligent waiver of any such conflict of interest.

■ In rejecting defendant's claim that the trial judge should have *sua sponte* inquired whether he waived any conflict of interest due to multiple representation, we do not mean to imply that we encourage multiple representation of defendants by the same counsel. The potential for a conflict of interest in such situations is very real. For this reason, we would encourage trial judges, in their discretion, in cases in which counsel represents multiple defendants, to go on the record and question defendants about waiver of any conflicts, advise them of the potential dangers of dual representation, and allow defendants to ask questions about the dual representation. *See Henderson,* 903 F.2d at 537.

However, because neither the Constitution, nor the procedural rules set by the Missouri Supreme Court, require such a *sua sponte* record determination of a knowing and voluntary waiver in the absence of knowledge on the part of the judge of an actual conflict of interest, we simply find no reversible error in the failure of the trial court to engage in such a *sua sponte* inquiry below.

### III. THE TRIAL COURT'S DENIAL OF POST–CONVICTION RELIEF DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL WAS NOT CLEARLY ERRONEOUS

### A. *No Conflict of Interest Resulted in Ineffective Assistance of Counsel*

Defendant points to a number of Missouri cases which he says have reversed convictions based on an actual conflict of interest. *See Gordon v. State,* 684 S.W.2d 888 (Mo. App.1985); *State v. Risinger,* 546 S.W.2d 563 (Mo.App.1977); *State v. Cox,* 539 S.W.2d 684 (Mo.App.1976). However, none of these cases recognized a *sua sponte* duty of the trial court to conduct an on-the-record inquiry into whether a valid waiver of the conflict existed.

Rather, the cases cited by defendant all concern properly raised claims for *post-conviction relief based on ineffective assistance of counsel* resulting from an actual conflict. Here, as noted, defendant has failed to raise the conflict of interest issue in his Rule 29.15 motion below, or on appeal. Thus, these cases are not helpful to defendant.

We nonetheless note that, even had defendant properly preserved the conflict of interest issue in his post-trial motion alleging ineffective assistance of counsel, the cases he cites do not provide a basis for remand for a new trial. In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest existed which adversely affected his lawyer's performance. *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718; *Luckett v. State,* 845 S.W.2d 616, 617 (Mo.App.1992).

The burden of proof is on the defendant to show an actual, not speculative, conflict of interest. *Luckett,* 845 S.W.2d at 617. Defendant must establish that there was something done "by counsel in the trial, or something which was forgone by counsel and lost to appellant, which was detrimental to him and which was advantageous to his codefendant...." *Mason v. State,* 468 S.W.2d 617, 620 (Mo.1971). Moreover:

> [A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.

*Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1719 (citations omitted). For the reasons discussed in Section II B, *supra,* we do not find that defendant has demonstrated that an actual conflict of interest existed, nor do we believe any such conflict led his counsel to do something detrimental to defendant, or to forego a beneficial defense.

The Missouri cases cited by defendant are also distinguishable on another ground. In each case defense counsel represented both defendant and a *prosecution witness.* In such a situation, Missouri courts have properly held that the very fact of such joint representation creates an inherent, and prejudicial, "conflict in every such case because of the differing positions and interest of the witness and the defendant." *Gordon,* 684 S.W.2d at 892. However, Ernest Kretzer was not a prosecution witness, and no inherent conflict existed between his position and the defense offered by defendant.

We find far more in common here with the "common defense" cases in which the courts have held that where defendant knew from the outset that counsel would represent all defendants, and where a common defense was asserted by all defendants, then no conflict of interest exists. *See, e.g., Odom v. State,* 783 S.W.2d 486, 488 (Mo.App.1990) (no conflict where common defense asserted); *Hopson v. State,* 728 S.W.2d 276, 278 (Mo. App.1987) (no conflict of interest where co-defendants' accounts of the circumstances were in substantial agreement); *Smith v. State,* 716 S.W.2d 467, 469 (Mo.App.1986) (same).[3]

For these reasons, we do not believe that defendant could meet the standard for finding ineffective assistance of counsel due to a conflict of interest, even had he properly preserved this issue.

**B.** *Failure to Subpoena Mr. Holmes Did Not Result in Prejudice to Defendant*

Defendant did preserve for appeal the claim that his counsel was ineffective because

---

**3.** Defendant asserts that he was only involved in the fight with Mr. Holmes and not with Mr. Nash and therefore there was no common defense. However, defendant testified that Mr. Holmes had begun the fight by hitting him with the pool cue, and that he responded in self-defense. Moreover, as noted above, he at no time during the trial attempted to lay the blame for the fight on his father in an effort to exculpate himself. The fact that he defended by alleging that he had not personally hit Mr. Nash was brought out by counsel at trial, was not inconsistent with the position taken by the other defendants, and did not detract from the common defense relied on by all defendants.

he failed to subpoena Mike Holmes as a witness to testify.

Appellate review of the trial court's decision denying a Rule 29.15 motion is expressly limited to a determination whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j). Such findings and conclusions are deemed clearly erroneous "only if, after reviewing the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987), *cert. denied,* 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 201 (1989).

To prevail on a claim of ineffective assistance of counsel a movant must prove that (1) counsel's performance was deficient, and that (2) movant was prejudiced by counsel's performance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The first prong of this test requires movant to show that counsel did not exercise the customary skill and diligence that a reasonably competent attorney would have exercised in similar circumstances. *Sanders,* 738 S.W.2d at 857. There is a strong presumption that counsel's conduct falls within "the wide range of reasonable professional assistance." *Bevly v. State,* 778 S.W.2d 297, 298 (Mo.App.1989).

■ In order to satisfy the second prong of this test,[4] a movant must affirmatively prove that he was prejudiced as a result of his counsel's actions. *Strickland,* 466 U.S. at 693–94, 104 S.Ct. at 2067–68. This requires a showing that there is a reasonable probability that, but for the alleged error, the result of the proceeding would have been different. *Id.* In determining whether such a reasonable probability exists the court must consider the totality of the evidence. *Bevly,* 778 S.W.2d at 299.

As the state points out, in a case such as this where defendant alleges failure to call a witness, defendant must also establish that "1) the witness could have been located through reasonable investigation; 2) the witness would have testified if called; and 3) the testimony of said witness would have pre-

sented a viable defense." *Harry v. State,* 800 S.W.2d 111, 115 (Mo.App.1990) (citations omitted). Moreover, "mere speculation as to what that testimony might have been is not sufficient." *Id.*

■ Defendant claims he received ineffective assistance of counsel because his counsel failed to call Mr. Holmes to testify. According to defendant, trial counsel intended to examine Mr. Holmes but did not subpoena him because the state had endorsed him as a witness and counsel assumed he thus would be present at trial. He was present for two days of the trial, but the State did not call him on those days. He failed to appear in court after the second day of trial, and defendant's trial counsel was unable to subpoena him at that point.

Defendant claims that Mr. Holmes would have testified that defendant was fighting with Mr. Holmes rather than with Mr. Nash. Defendant did not offer the testimony of Mr. Holmes at the Rule 29.15 motion hearing. The only evidence in the record is a written police statement by Mr. Holmes which did not discuss whether or not defendant hit Mr. Nash. Moreover, defendant's trial counsel testified during the evidentiary hearing that he expected to get favorable testimony from Mr. Holmes, but when asked what this was counsel simply stated that "[t]here were certain things that [the other witnesses] couldn't tell me about Mr. Holmes that I would have gotten into with him ...". These "certain things" were not enumerated by defendant or his trial counsel. It does not appear from the record that counsel even knew how Mr. Holmes would have answered his questions; counsel just wanted to ask them. We can thus only speculate whether Mr. Holmes' testimony would have aided defendant, much less have changed the result.

As noted, mere speculation as to what testimony would have been does not provide a basis for post-conviction relief. Because denial of the Rule 29.15 motion was proper on this basis, we do not reach the further question whether Mr. Holmes' testimony would have been cumulative, or whether a strategic choice by counsel not to subpoena

4. Other than in cases involving a conflict of in- terests, *see supra,* § III.A.

Mr. Holmes would have been justified under *State v. Harris*, 870 S.W.2d 798, 816 (Mo. banc), *cert. denied,* ── U.S. ──, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994) (strategic choices as to what witnesses to call will not support claim of ineffective assistance); *McCrary–El v. State*, 703 S.W.2d 29, 30 (Mo.App.1985) (calling of alibi witness who would not unqualifiedly have supported defense was matter of trial strategy).

For all of the reasons stated above, we affirm defendant's conviction and denial of his motion for post-conviction relief.

All concur.